**In re GRAND JURY EMPANELED ON APRIL 6, 1993.**

Misc. No. 93–36 (WGB).

United States District Court, D. New Jersey.

Dec. 6, 1994.

Faith S. Hochberg, U.S. Atty. by Marc N. Garber, Asst. U.S. Atty., (Argued and on the Brief), Newark, NJ.

Robinson, St. John & Wayne by Kevin H. Marino (Argued and on the Brief), William M.A. Porter (on the Brief), Newark, NJ.

## OPINION

BASSLER, District Judge:

The government has filed this motion to compel respondent,[1] a target of a federal grand jury investigation, to appear and testify before the grand jury. Specifically, the government seeks to compel respondent, as a custodian of records for a corporation also under investigation, to produce corporate records to the grand jury and to provide oral testimony sufficient to bring the records within the business records exception to the hearsay rule, Federal Rule of Evidence 803(6). The issue presented, one of first impression in this Circuit, is whether compelled business records testimony is (i) implicit in and auxiliary to the required production of documents and therefore not violative of the Fifth Amendment, or (ii) independently incriminating and therefore proscribed by the Fifth Amendment. For the reasons set

---

1. This matter remains sealed. The name of the respondent and the name of the corporation for which he worked will therefore be anonymous.

forth below, the Court concludes that, in the circumstances of this case, compelled business records testimony would violate respondent's Fifth Amendment rights. Thus, the government's motion will be denied.

## I. *BACKGROUND*

Respondent was a regional vice-president of a corporation from early 1992 until April of 1994. The corporation became the subject of a grand jury investigation that sought to determine whether the company and various individuals connected with it engaged in a scheme to defraud through the use of the mails in violation of 18 U.S.C. § 1341. In March of 1994, the government informed respondent that he was a target of the grand jury's investigation.

Respondent was served with a grand jury subpoena dated May 6, 1994, requiring his appearance on June 13, 1994. The subpoena directed respondent, in his capacity as a custodian of records for the corporation, to appear and testify before the grand jury and to produce certain specified documents on behalf of the corporation.

At respondent's request, the government adjourned the June 13 appearance so that respondent could consult with an attorney. The government then served respondent through his counsel with a subpoena dated June 14, 1994, requiring respondent's appearance on June 20, 1994. This response date was again adjourned, at the request of respondent's counsel, to June 28, 1994.

On June 27, 1994, respondent's counsel informed the government that respondent would appear before the grand jury and produce and identify the corporate documents in his possession. Respondent contended, however, that the government's intention to have respondent provide oral testimony sufficient to bring the subpoenaed documents within the business records exception to the hearsay rule, Federal Rule of Evidence 803(6), would violate his Fifth Amendment privilege against self-incrimination.

The government declined respondent's offer to turn over and identify the documents and on August 15, 1994 moved for an order to show cause why respondent should not be held in contempt for his failure to comply with the June 14 subpoena. Before the August 26 return date on the order to show cause, the parties agreed that the government would file the within motion to compel compliance with the subpoena, mooting the order to show cause. The Court heard oral argument on this motion on October 6, 1994.

Following oral argument, in a letter dated October 7, 1994, the Court wrote to counsel with the following invitation: "[B]efore the Court has to confront the issue of self-incrimination by [the custodian] the government should first issue a subpoena to the custodian of corporate records in general and give the corporation the opportunity to designate as custodian of corporate records an individual who could provide both authentication and business records testimony." For the reasons outlined in a letter dated October 11, 1994, counsel for the government declined the Court's invitation. The Court then proceeded to consider the merits of this motion.

## II. *DISCUSSION*

### A. *The Fifth Amendment and the Collective–Entity Rule*

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. This privilege has been interpreted to protect an individual from being compelled to provide testimonial communications that might incriminate him, including the compelled production of personal records. *E.g., Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974) ("It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony.").

■ It is equally well established, however, that a corporation has no Fifth Amendment privilege to refuse to produce its records. *E.g., Hale v. Henkel*, 201 U.S. 43, 74, 26 S.Ct. 370, 378–79, 50 L.Ed. 652 (1906). Thus, "for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals. This

doctrine—known as the collective entity rule—has a lengthy and distinguished pedigree." *Braswell v. United States,* 487 U.S. 99, 104, 108 S.Ct. 2284, 2288, 101 L.Ed.2d 98 (1988).

■ Despite the "lengthy and distinguished pedigree" of the collective entity rule, the Courts of Appeals were split until *Braswell* regarding whether to recognize a Fifth Amendment privilege when the act of producing collective entity documents might be personally incriminating to the custodian. *Id.* at 102 n. 2, 108 S.Ct. at 2287 n. 2. Under the collective entity rule as authoritatively pronounced in *Braswell,* a custodian of records may not invoke the Fifth Amendment to avoid producing the documents of a collective entity that are in his custody, even where production of those documents would be personally incriminating.[2] *Id.* at 105–13, 108 S.Ct. at 2288–93 (detailing history of collective entity rule and concluding that, notwithstanding the Court's decisions in *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), "[a] custodian may not resist a subpoena for corporate records on Fifth Amendment grounds"). The *Braswell* Court offered the following rationale for the collective entity rule:

> [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government. Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege

asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

487 U.S. at 109–10, 108 S.Ct. at 2291 (citation omitted).

The import for this case of the collective entity rule as enunciated by *Braswell* is that its application here forecloses any argument by respondent that production of the documents cannot be compelled because it would personally incriminate him. Even assuming such incrimination, respondent must produce the documents. In recognition of this, respondent in this case has agreed to produce all corporate records in his custody that are responsive to the government's subpoena.

### B. Oral Testimony Implicit in and Auxiliary to the Act of Production

■ The collective entity rule also requires that the custodian identify or authenticate, by oral testimony, the documents produced pursuant to the subpoena. This corollary to the rule that the custodian must produce collective entity documents was first discussed by the Supreme Court in *Curcio v. United States,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957).

In *Curcio,* the custodian appeared before the grand jury and testified that certain of the records demanded by the subpoena were not in his possession. He refused, on self-incrimination grounds, to answer questions regarding the whereabouts of those records. In the Supreme Court, the government conceded that the custodian's answers to its questions would be incriminating, but argued that the representative duty which required the production of records also required the giving of oral testimony.

The Court rejected the government's argument, explaining as follows: "A custodian, by assuming the duties of his office, undertakes

---

**2.** The Court in *Braswell* noted, however, that the government "may make no evidentiary use of the 'individual act' against the individual. For example, in a criminal prosecution against the custodian, the government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individu-

al, the custodian." 487 U.S. at 118, 108 S.Ct. at 2295. The Court added that "[b]ecause the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case." *Id.* (footnote omitted).

the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visitorial powers. But he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony." *Id.* at 123–24, 77 S.Ct. at 1149. The Court added that "[t]here is no hint in [our prior collective entity] decisions that a custodian of corporate or association books waives his constitutional privilege as to oral testimony by assuming the duties of his office. By accepting custodianship of records he 'has voluntarily assumed a duty which overrides his claim of privilege' *only* with respect to the production of the records themselves." *Id.* at 124–25, 77 S.Ct. at 1150 (quoting *Wilson v. United States,* 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771 (1911)) (emphasis in *Curcio*).

The *Curcio* Court went on to discuss and distinguish *United States v. Austin–Bagley Corp.,* 31 F.2d 229 (2d Cir.1929). In *Austin–Bagley,* the Second Circuit, in an opinion authored by Judge Hand, determined that a custodian could be compelled not only to produce subpoenaed documents, but to provide oral testimony authenticating the documents. *Id.* at 234. Judge Hand stated that the production "may be made effective by compelling the producer to declare that the documents are genuine," thus "proving by his oath that they were what they purport to be." *Id.* Judge Hand concluded that "testimony auxiliary to the production is as unprivileged as are the documents themselves." *Id.*

Without "pass[ing] on the[ ] validity" of the decision, the *Curcio* Court distinguished *Austin–Bagley* as follows:

> The custodian's act of producing books or records in response to a subpoena duces tecum is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself. The custodian is subjected to little, if any, further danger of incrimination.

*Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150. Thus, the *Curcio* Court suggests that com-

pelled oral testimony will not run afoul of the Fifth Amendment where it merely makes explicit what is implicit in the act of production and does not provide further independent incrimination.

■ Based upon the facts before it, the *Curcio* Court concluded that the Fifth Amendment would be violated by the government's questions:

> However, in the instant case, the Government is seeking to compel the custodian to do more than identify documents already produced. It seeks to compel him to disclose, by his oral testimony, the whereabouts of books and records which he has failed to produce. It even seeks to make the custodian name the persons in whose possession the missing books may be found. Answers to such questions are more than "auxiliary to the production" of unprivileged corporate or association records.

*Id.* Thus, under *Curcio,* compelled oral testimony that is not implicit in or auxiliary to the production of the documents and that may entail further independent incrimination will violate the Fifth Amendment.

The Court in *Braswell* reaffirmed that a custodian can be compelled to provide limited oral testimony. After quoting extensively from *Curcio,* the *Braswell* Court noted with approval *Curcio*'s conclusion that the Fifth Amendment was not violated in "those cases in which a corporate officer was required to produce corporate records and merely identify them by oral testimony." *Braswell,* 487 U.S. at 114, 108 S.Ct. at 2293.

Based upon the above, respondent in this case has represented to the government and to the Court that he is willing to appear before the grand jury, produce the documents requested by the subpoena, and identify through oral testimony that the documents produced are in fact those called for by the subpoena. It is respondent's position that such authentication testimony is all that can be required of him consistent with the Fifth Amendment.

### C. Business Records Testimony—Implicit in and Auxiliary to Production or Independently Incriminating?

The government· seeks to compel respondent, in addition to the above, to provide oral testimony · that will bring the documents within the business records exception to the hearsay rule, Federal Rule of Evidence 803(6), and thus ensure their eventual admission at a possible future trial. The issue before the Court, therefore, is whether the business records testimony that the government seeks to compel from respondent is implicit in and auxiliary to the act of production or whether it would entail further incrimination independent of the production itself.

To resolve this issue, the Court must look to the nature of the testimony that the government seeks to compel from respondent, i.e., testimony sufficient to bring the subpoenaed records within the business records exception to the hearsay rule. "The business records exception permits admission of documents containing hearsay provided foundation testimony is made by 'the custodian or other qualified witness,' that: (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business." *United States v. Pelullo*, 964 F.2d 193, 200 (3d Cir.1992) (citing *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989)); *see also United States v. Console*, 13 F.3d 641, 656–57 (3d Cir.1993) (same).

Under Rule 803(6) and *Pelullo*, then, respondent would be compelled to testify regarding whether the subpoenaed records were made contemporaneously by someone with knowledge, whether they were made in the regular course of business, and whether they were regularly kept by the business. The government asks this Court to conclude that such testimony cannot be objected to upon Fifth Amendment grounds because it is implicit in and auxiliary to the production of the documents, similar to identification and authentication testimony. In effect, the government argues that such business records testimony is outside the scope of the Fifth Amendment because it will never entail further incrimination independent of the act of production.

The government places principal reliance for its argument upon *In re Custodian of Records of Variety Distributing, Inc.*, 927 F.2d 244 (6th Cir.1991) ("*Variety Distributing*"). In *Variety Distributing*, the Sixth Circuit, addressing the issue now before this Court, concluded that compelled· business records testimony merely makes explicit what is implicit in the act of production. 927 F.2d at 250. The Court explained its conclusion as follows:

> Because a custodian of corporate records has no necessary relation to the contents of the documents which he has produced, we do not believe that statements that he is familiar with the company's recordkeeping practices and knows that the company regularly keeps such records in the course of a regularly conducted business activity [are] sufficiently incriminating in and of [themselves]. . . . As the Court in *Curcio* stated, authentication merely makes explicit what is implicit in the act of production and "the custodian is subjected to little, if any, further danger of incrimination."

*Id.* at 251 (citation omitted).

It is clear from the quoted passage, and from the Court's opinion on the whole, that the *Variety Distributing* Court considered the business records testimony to be authentication testimony (to·which respondent, under *Curcio*, cannot object). While there is no doubt that business records testimony will generally authenticate documents, the *Variety Distributing* Court nonetheless failed to distinguish between authentication under Federal Rule of Evidence 901 and admissibility of hearsay under the exceptions to the hearsay rule.

Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). "All that is required is a foundation from which

the fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *In re Japanese Electronic Products,* 723 F.2d 238, 285 (3d Cir.1983) ("*Japanese Electronic Products* "). In distinguishing authentication from admissibility, the Third Circuit explained as follows:

> The rules governing admissibility are aimed at preventing use against a party of materials that are as to it untrustworthy. Thus as to each party evidence must have some independent basis of admissibility. Less is required in establishing that evidence is what its proponent claims it to be.... The evidence which suffices to establish authenticity should be evidence that is relevant on the limited question of genuineness: that is, evidence admissible against the party having such a relationship to the proffered materials that it is likely to know the facts as to genuineness.

*Id.*

It is thus clear that less is required to authenticate documents than is required to render them admissible under Rule 803(6). While Rule 803(6) testimony will generally authenticate records, *see, e.g., Japanese Electronic Products,* 723 F.2d at 285, so will testimony that is far less specific and, in this case, less intrusive.[3] Moreover, it is obvious that a document may well be authentic without meeting the Rule 803(6) requirements. *See, e.g.,* J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 901(a)[02] at 901–28 ("A document is not admissible simply because it has been authenticated. For example, if offered to prove the truth of assertions made in it, the document will need to meet hearsay requirements.").

To authenticate the records in this case, respondent will have to testify as to the location of the documents produced and that the produced records are those called for by the subpoena. Much more is required under Rule 803(6), specifically, testimony regarding the conduct of the corporation at the time the subpoenaed records were created. Such testimony may require a custodian to divulge personal knowledge of the type of business conducted and the routine practices of the corporation. Nonetheless, the *Variety Distributing* Court held that a custodian cannot object on Fifth Amendment grounds to compelled Rule 803(6) testimony. In the view of this Court, the Sixth Circuit's ruling clearly expands *Curcio* and *Braswell,* under which the only oral testimony that has explicitly been sanctioned is mere identification and true authentication testimony.[4] This unacknowledged expansion may well be attributable to the Court's failure to distinguish between authentication under Rule 901 and admissibility of hearsay under the exceptions to the hearsay rule.

The government offers essentially three arguments as to why this Court should adopt the expanded view of the Sixth Circuit.

First, the government's primary argument is that the *Variety Distributing* Court's decision is consistent with *Braswell* and other prior Supreme Court precedent.[5] Through-

---

3. In this regard, the government argues that "because the auxiliary to production rule requires a custodian to authenticate the documents he produces, and the Third Circuit holds that authentication testimony includes Rule 803(6) testimony, the government should be allowed to authenticate the records produced by a corporate custodian through business records testimony." Gov't.Rep.Br. at 4 (footnote omitted).

The government's syllogism breaks down because, as is discussed *infra,* the only authentication testimony ever countenanced by the Supreme Court is testimony merely identifying the documents produced as genuine and as those called for by the subpoena. The government's misunderstanding is clear from its characterization of respondent's argument: "The respondent's complaint seems to be that business records testimony can never constitute authentication testimony. He could not be more wrong."

*Id.* at 3. In fact, respondent's complaint is not that business records testimony would not authenticate the documents, but that he should be permitted to authenticate the documents in a way that will not provide further incrimination. The Court agrees.

4. The government's concession that it is seeking to "expand" the auxiliary to production rule admits as much. Gov't.Rep.Br. at 8 ("the auxiliary to production rule should be expanded to include Rule 803(6) testimony").

5. The government also places reliance upon *Heike v. United States,* 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450 (1913). That case, however, did not address the issue presented here. Indeed, in *Heike,* the testimony objected to was a summary of corporate books that had simply been handed over by the petitioner in a prior

out its argument, the government continually urges that the collective entity decisions establish that the purpose of the auxiliary to production rule is "to ensure the admission of documents, not merely their authentication." Gov't.Rep.Br. at 3; *see also id.* at 4 ("the auxiliary to production rule ensures the admission of a collective entity's records, not merely their authentication—whatever form that proof may take"); *id.* at 6 ("the auxiliary to production rule requires a custodian to provide all testimony necessary to make the documents produced in his representative capacity admissible at trial").

This Court must emphatically disagree. The cases simply do not support this argument.[6] Rather, the cases support the proposition that authentication testimony, a condition precedent to admissibility, can be compelled; they do not suggest that the admissibility of the documents under the exceptions to the hearsay rule is guaranteed. Indeed, under the government's theory outlined above, a custodian could be compelled to provide foundation testimony regarding a document that would otherwise be inadmissible hearsay to bring it within the co-conspirator exception to the hearsay rule, Rule 801(d)(2)(E) ("statement is not hearsay if ... [it] is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy"), a result clearly inconsistent with *Curcio*.

The Court finds that the expanded scope of oral testimony urged by the government's theory, that a custodian of entity records gives up his right to raise the Fifth Amendment when compelled to provide Rule 803(6) testimony, is in fact inconsistent with the historically circumscribed nature of oral testimony that has been compelled from entity custodians. *See, e.g., Braswell,* 487 U.S. at 114, 108 S.Ct. at 2293 (approving of cases where custodian is compelled to produce records "and merely identify them"); *Curcio,* 354 U.S. at 123–25, 77 S.Ct. at 1149–50 (A custodian "cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony.... There is no hint in [our prior collective entity] decisions that a custodian of corporate or association books waives his constitutional privilege as to oral testimony by assuming the duties of his office. By accepting custodianship of records he 'has voluntarily assumed a duty which overrides his claim of privilege' *only* with respect to the production of the records themselves.") (citation omitted) (emphasis in *Curcio* ); *Communist Party of the United States v. United States,* 331 F.2d 807, 813 (D.C.Cir.1963) ("although an officer who produces books and records may be required to supply 'auxiliary information,' such as authentication of the items produced, this doctrine is sharply limited to information which creates no danger of incrimination") (citations omitted); *City of Chicago v. Reliable Truck Parts Co., Inc.,* 768 F.Supp. 642, 645–46 (N.D.Ill.1991) ("In *Braswell,* the Supreme Court took care to limit the scope of its holding to so-called "act of production" testimony by records custodians.... The *Braswell* Court ... expressly distinguished compelled 'act of production' testimony from

---

proceeding that had nothing to do with the proceeding at which the objection was raised.

**6.** The government relies heavily upon *United States v. Austin–Bagley Corp.,* 31 F.2d 229 (2d Cir.1929). There, the Court held that the custodian could be compelled to "declare that the documents are genuine," *id.* at 234, a position with which the Supreme Court has agreed. *E.g., Braswell,* 487 U.S. at 114–15, 108 S.Ct. at 2293–94; *Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150.

In dictum, the Court also stated that "[b]y accepting the office of custodian the holder not only exposes himself to producing the documents, but to making their use possible without requiring other proof than his own." *Austin–Bagley,* 31 F.2d at 234. The *Curcio* Court expressly chose *not to* "pass on the[ ] validity" of

*Austin–Bagley* to the extent that *Austin–Bagley* suggests that more than mere identification or authentication testimony can be compelled. *Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150. Of course, *Austin–Bagley* itself can be read as permitting no more than compelled authentication testimony, if "use" is interpreted to refer to authentication as a condition precedent to admissibility and not to ultimate admissibility. In any event, the Supreme Court has never adopted a reading of *Austin–Bagley* permitting anything more than compelled authentication testimony, and this Court finds that the dictum in *Austin–Bagley,* if read broadly as the government suggests, would be inconsistent with the above authorities; that interpretation must therefore be rejected.

compelled oral testimony by a records custodian beyond mere identification of documents produced.... [T]he *Braswell* Court thus also reaffirmed the constitutional prohibition on the state's power to compel oral testimony where the possibility of self-incrimination exists."); *United States v. Lawn*, 115 F.Supp. 674, 677 (S.D.N.Y.1953) ("The doctrine of the absence of privilege of corporate officers is thus closely circumscribed and the Government, beyond requiring the production and identification of the corporate records, does not have an unbridled right to interrogate the corporate officer, without his constitutional privilege being available to him.") (citation omitted).

Given the above authorities, the Court cannot agree that business records testimony concerning the corporation's record-keeping practices is implicit in and auxiliary to the act of production. Compelling respondent to provide oral testimony about how the documents were created, maintained, and circulated by officers and employees is different in kind, and potentially independently incriminating, from producing the documents and testifying that they are those records called for by the subpoena.

The Court must conclude that Rule 803(6) testimony will often entail independent incrimination separate and apart from the act of production itself and required authentication testimony.[7] In reaching this conclusion, the Court is guided in part by Judge Beck-

er's concurring opinion in *In re Grand Jury Matter*, 768 F.2d 525, 529–532 (3d Cir.1985) ("*Brown* ") (en banc). There, in an opinion that foreshadowed the Court's decision in *Braswell*, Judge Becker rejected the majority's conclusion that an entity custodian could assert a Fifth Amendment privilege with regard to the compelled production of entity documents. *Id.* at 529–30 (concluding that "the custodian is deemed to have waived his privilege with respect to any testimonial incrimination inherent in the act of production by acceptance of his corporate position") (citation omitted). Judge Becker stated that "[w]ere this a 'mere production' case, in which the only potential incrimination to [the custodian] from the production of the corporate documents was that which is inherent in the production itself—i.e., an acknowledgment that the documents exist, that the custodian has control over them, and that they are authentic corporate documents—I would agree with the result reached by Judge Garth [upholding the contempt citation imposed by the district court]." *Id.* at 531.

Judge Becker concurred in the result reached by the majority, voting, however, to reverse the district court's order holding a custodian in civil contempt for not complying with the subpoena. Judge Becker concurred because he found that "the case involves testimonial incrimination beyond that inherent in the act of production because of the wording of the grand jury subpoena." *Id.* at 531.[8] Specifically, Judge Becker found that

7. The government also argues that the scope of compelled oral testimony can be expanded consistently with the Fifth Amendment because the government will ensure that the respondent is not prejudiced. Specifically, the government represented at oral argument that, if permitted, it would have respondent produce the documents, authenticate them, and provide business records testimony regarding them before one grand jury, and, if appropriate, present evidence to indict respondent before a wholly separate grand jury. The second grand jury would not be told that it was respondent who produced the documents or testified about them, but merely that someone did so on behalf of the corporation. *See supra* note 2 (discussing the *Braswell* Court's analogous provisions for protecting a custodian).

In *Braswell*, only after the Court found that the Fifth Amendment would not be violated by compelled production and authentication did it consider the protections that were to be afforded to a records custodian. *Braswell*, 487 U.S. at 117–

18, 108 S.Ct. at 2295 ("Although a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating, we do think certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity."). Inasmuch as the Court here finds that the Fifth Amendment would be violated were respondent compelled to provide business records testimony, it need not consider whether the government's proposal would sufficiently protect respondent had it ruled otherwise.

8. The subpoena provided in pertinent part that the custodian had to bring "all workpapers, reports, records, correspondence and copies of tax returns in your possession or under your control *relating to accounting services performed by you or under your supervision* on behalf of the below-listed persons or entities for the years 1977 through 1982." *Id.* at 531 (emphasis in *Brown* ).

the subpoena would have effectively required the custodian to answer the question, " 'Did you prepare the documents?,' " the answer to which "would consequently convey implied and probably incriminatory testimony by [the custodian] that he had prepared, or had supervised the preparation of, the documents produced." *Id.* (footnote omitted). Judge Becker explained that the custodian's "compliance with the subpoena, therefore, would potentially result in substantially more incriminating testimony than that necessarily resulting from the production of corporate documents." *Id.* In such circumstances, the custodian must have an opportunity to argue that the Fifth Amendment would be violated by such compelled, independently incriminating testimony. *Id.*[9] This is all the more true in this case, where the testimony sought to be compelled is more intrusive than the question implied in the *Brown* subpoena and requires actual oral testimony.

The government's second argument is that if records custodians are not compelled to provide Rule 803(6) testimony, then the government's ability to prosecute white-collar crime will be severely curtailed. Gov't.Rep.Br. at 6–8. The government complains that without an expanded auxiliary to production rule, it will "have only the documents, but no testimony by which to lay a foundation for their admission in evidence." *Id.* at 7.

Inasmuch as the Court finds the proposed expansion inconsistent with past Supreme Court precedent, it need not belabor this point, except to note that "[i]f this result adds to the burden of diligence and efficiency resting on enforcement authorities, any other conclusion would seriously compromise an important constitutional liberty. 'The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime.' " *Hoffman v. United States*, 341 U.S.

479, 489–90, 71 S.Ct. 814, 819–20, 95 L.Ed. 1118 (1951) (quoting *United States v. White*, 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944)). The Court also notes that, contrary to the assertions of the government, the *Braswell* Court's concern was that the documents find there way to the "grand jury room," 487 U.S. at 116–17, 108 S.Ct. at 2294–95, not into evidence at an eventual trial.

Finally, the government argues that it could obtain Rule 803(6) testimony indirectly "through craftily-phrased subpoenas," and should not be forced to do so. Gov't.Br. at 13–14; Gov't.Rep.Br. at 8–9 (citing *In re Grand Jury Proceedings*, 523 F.Supp. 107 (E.D.Pa.1981)). The government, however, assumes what it asks this Court to conclude, i.e., that such a subpoena would not violate a custodian's Fifth Amendment rights. As respondent points out, "[t]o the precise extent that such a subpoena, however phrased, sought incriminating testimony beyond authentication, such a subpoena would be promptly quashed." Resp.Br. in Opp. at 12. Indeed, Judge Becker's concurring opinion in *Brown*, discussed *supra*, suggests precisely this result. *See Brown*, 768 F.2d at 529–32.

▪ Having found unpersuasive the government's arguments in favor of expanding the scope of oral testimony that may be compelled under the auxiliary to production rule consistently with the Fifth Amendment, the Court holds that a custodian of entity records may invoke the Fifth Amendment privilege when the government seeks to compel the custodian to provide testimony that would bring the subpoenaed documents within the business records exception to the hearsay rule, Federal Rule of Evidence 803(6). While a custodian cannot object to the act of production itself or limited authentication testimony, the custodian should have an opportunity to show that compelled business

---

9. *See also* Peter J. Henning, *Testing the Limits of Investigating and Prosecuting White Collar Crime: How Far Will the Courts Allow Prosecutors to Go?*, 54 U.Pitt.L.Rev. 405, 438–39 (1993). As Henning points out, Rule 803(6) testimony "may be crucial to implicating the witness in criminal activity by the organization, which conflicts with *Curcio*'s prohibition against using oral testimony against the custodian." *Id.* (footnote omitted). By way of example, Henning points out that "[t]he testimony related to establishing the business records exception can also encompass the size of the business and its method of disbursing proceeds, which is evidence that can also prove a continuing criminal enterprise" under 21 U.S.C. § 848(a) & (c).

records testimony would result in incrimination.

The question remains whether, in the circumstances of this case, respondent has established a danger of incrimination independent of the act of production that might result from compelled Rule 803(6) testimony. The Court concludes that such a danger does exist, and that respondent cannot be compelled to provide the business records testimony sought by the government.

"[T]he touchstone for evaluating the appropriateness of the privilege" where the custodian claims that oral testimony beyond mere identification will violate the Fifth Amendment "must be the 'incriminating tendency of the disclosure.'" *Haner v. United States,* 440 U.S. 1308, 1309, 99 S.Ct. 1485, 1486, 59 L.Ed.2d 762 (1979) (citation omitted). In this regard, the Fifth Amendment privilege applies "not only to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818; *see also Reliable Truck Parts,* 768 F.Supp. at 647 (permitting corporate officers to assert Fifth Amendment privilege where proposed questions "may very well require the individual defendants to provide ... information 'which would furnish a link in the chain of evidence needed to prosecute the[m]'") (quoting *Hoffman*). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* 341 U.S. at 486–87, 71 S.Ct. at 818.

Here, respondent and the corporation for which he was once employed are being investigated for possibly engaging in a scheme to defraud through the use of the mails in violation of 18 U.S.C. § 1341. Respondent argues that his answers to the proposed 803(6) questions present a "very real danger" that his testimony "would be personally incriminating" vis-a-vis the charges that are being investigated. Resp.Br. in Opp. at 10 (citing *United States v. Pearlstein,* 576 F.2d 531 (3d Cir.1978); *United States v. Vandersee,* 279 F.2d 176 (3d Cir.1960)). Under *Pearlstein,* the elements of knowledge and intent in a mail fraud prosecution "can be demonstrated circumstantially," and "of significance in evaluating the[ ] possible knowledge of the scheme to defraud is the defendants' role in the overall operation." 576 F.2d at 541–42 (citations omitted).

Respondent contends that because fraud is the underlying issue, and because the investigation reveals that criminal activities may have taken place, respondent's testimony regarding how documents were created, maintained, and kept would reveal his personal knowledge of the operations of the corporation and could be further incriminating. The Court agrees that the proposed business records testimony could, in the circumstances of this investigation, "furnish a link in the chain of evidence needed to prosecute the [custodian] for a federal crime" and "might be dangerous because injurious disclosure could result." *Hoffman,* 341 U.S. at 486–87, 71 S.Ct. at 818. Therefore, the government's motion must be denied.

### III. CONCLUSION

For the reasons set forth above, the government's motion to compel respondent's compliance with the June 14, 1994 subpoena is denied.