**In re GRAND JURY PROCEEDINGS (ABC Corporation).**

**M.B.D. No. 06–40024–FDS.**

United States District Court, D. Massachusetts.

Jan. 12, 2007.

E. Peter Parker, Law Office of E. Peter Parker, Boston, MA, for ABC Corporation.

Fred M. Wyshak, Jr., United States Attorney's Office, Boston, MA, for United States.

## MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION TO COMPEL

SAYLOR, District Judge.

This is a proceeding to compel compliance with a grand jury subpoena directed to the custodian of records of a corporation. The matter presents at least two questions: (1) the extent to which a corporation fulfills its responsibility to respond to a grand jury subpoena duces tecum directed to its "keeper of records" by appointing an independent agent to produce the records, and (2) the extent to which a corporate records custodian can be compelled to provide testimony auxiliary to the production of the records.

For the reasons set forth below, the Court concludes that a corporation does not fulfill its obligation to respond to a subpoena duces tecum by producing an independent records custodian who cannot provide competent testimony auxiliary to that production if the true records custodian is available. The Court further concludes that testimony generally can be compelled from such a records custodian concerning (1) the identity of the documents produced to the grand jury; (2) the corporation's search for and production of documents responsive to the subpoena; and (3) the authenticity of the documents within the meaning of Fed.R.Evid. 901. Testimony qualifying the documents as business records within the meaning of Fed.R.Evid. 803(6) generally may not, however, be compelled over the assertion of a Fifth Amendment privilege by the records custodian.

### I. Background

On October 4, 2006, a subpoena duces tecum was issued to "The Record Keeper, ABC Corporation" by a grand jury sitting in the District of Massachusetts.[1] The

---

1. In order to protect the secrecy of the grand jury proceeding, in the public version of this memorandum the Court will use fictitious name for the corporation, "ABC Corporation."

subpoena commanded the recipient to appear and produce various corporate records concerning a construction project. On October 13, the grand jury issued a second subpoena duces tecum to "The Record Keeper, ABC Corporation" which commanded the recipient to appear and testify and to produce additional corporate records concerning the same project.[2]

After several postponements, ABC produced an individual in response to the subpoena. That individual appeared before the grand jury and produced documents that he stated were responsive to the subpoena. He also testified, in substance, that he had never been employed by ABC; that he had been retained by counsel for the corporation and the president and sole shareholder of ABC for the purpose of producing the subpoenaed records; that he did not conduct the search for the records, or make the determination which documents were responsive to the subpoena; and that he has no personal knowledge as to the search for, or identification of, the documents, or as to their authenticity within the meaning of Fed. R.Evid. 901 or their qualification as business records within the meaning of Fed. R.Evid. 803(6).

According to counsel for ABC, it is a corporation organized under the laws of Massachusetts. It is engaged in the business of construction and construction management. One individual owns all of the shares of the corporation and has been its president since 1992. The corporation has no other officers or directors.

ABC worked as a subcontractor on a construction project that is the subject of the investigation. According to counsel for ABC, the corporation was active on the project between 1999 and 2005. The ABC employees who maintained the records produced to the grand jury (and presumably created them) are no longer employed by the corporation. Those employees worked out of an office in New York state that was closed before the subpoenas were served. ABC presently has a single employee other than its president. That employee is responsible for estimating and project management, and did not work on the construction project at issue and did not work out of the New York state office. All other personnel have been laid off.

According to counsel, ABC does not represent, and cannot control, its former employees. Furthermore, it appears from the representations of counsel that the president of ABC would assert a Fifth Amendment privilege if subpoenaed to testify, although apparently no such subpoena has issued.

Following the individual's testimony before the grand jury, a hearing was held before this Court, in which the government contended that ABC had failed to comply with the subpoena. According to the government, ABC had provided a custodian of records who lacked personal knowledge regarding the documents produced and the search performed by the corporation and who could not authenticate the records for purposes of Fed.R.Evid. 901 or qualify them as business records under Fed. R.Evid. 803(6). The government subsequently filed a motion to compel. The individual again testified before the grand jury, but the government maintains that ABC has still failed to comply with the subpoena, for essentially the same reasons.

## II. *Analysis*

██ There is no question that the grand jury is entitled to production of all corporate records called for by the subpoena,

---

**2.** For the sake of convenience, the Court will treat the two subpoenas as one unless the context indicates otherwise.

and indeed it appears that those records have already been produced. The dispute here concerns the "auxiliary" testimony that necessarily accompanies those records. The government contends, in substance, that it is entitled to testimony from a representative of ABC corporation with personal knowledge (1) describing the process of responding to the subpoena, including the nature and scope of the search conducted, (2) authenticating the records produced under Fed.R.Evid. 901, and (3) qualifying the records under the business records exception to the hearsay rules, Fed.R.Evid. 803(6).

 The general principles applicable here are easily stated, if sometimes difficult to apply. The grand jury is entitled to "every man's evidence," subject only to the assertion of a valid privilege. *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Although individuals are entitled to assert a Fifth Amendment privilege, a corporation is not. *Braswell v. United States*, 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988). The custodian of records of a corporation therefore can be compelled to produce corporate records to the grand jury. *Braswell*, 487 U.S. at 109, 108 S.Ct. 2284. The records custodian can also be compelled to provide testimony that is "auxiliary" to the production of those records, even where the custodian in his individual capacity asserts a Fifth Amendment privilege. *Curcio v. United States*, 354 U.S. 118, 125, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957); *United States v. Lawn Builders of New England, Inc.*, 856 F.2d 388, 393–94 (1st Cir.1988). That requirement applies equally to all corporations, even those with a single

shareholder, director, officer, and employee. *Amato v. United States*, 450 F.3d 46, 50–51 (1st Cir.2006).

Here, the corporation has produced an independent records custodian as a substitute for the actual custodian—the president of ABC, who (apparently) intends to assert his Fifth Amendment privilege. There are two issues presented: whether the corporation has fulfilled its obligation by producing an independent records custodian without personal knowledge of the records or the search, and whether the corporation can be compelled to produce the true custodian to give auxiliary testimony concerning the records.

### A. *The Appointment of an Outside Agent as Record Keeper*

As noted, the corporation appointed an outside agent to serve as "record keeper" for purposes of responding to the subpoena.[3] The practice of appointing an outside agent for the purpose of producing corporate records to the grand jury appears to have originated more than twenty years ago as a means by which a corporation might comply with its duty to produce records without impairing the Fifth Amendment privileges of any corporate officers. *See In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 57 (2d Cir.1985); *United States v. Barth*, 745 F.2d 184, 189 (2d Cir.1984). The utility of the practice is, however, open to serious question in light of the Supreme Court's subsequent decision in *Braswell*.

In *Braswell*, the Supreme Court held that a custodian of corporate records could

---

**3.** The enforcement of grand jury subpoenas directed to the "record keeper" of a corporation is complicated by the fact that the phrase has no specific meaning in the corporate world. Employees rarely, if ever, actually have the title of "record keeper" in a corporation, and the meaning of the phrase is not clear in every context. Here, however, it is obvious that the true custodian of records is the president of the corporation, as there is only one other employee, and that employee appears to have no role at all in the creation or maintenance of the relevant records.

not resist a subpoena for those records on the ground that the act of production would violate his Fifth Amendment privilege. 487 U.S. at 109, 108 S.Ct. 2284. Because the corporations in question were small (essentially, one-person) operations, the petitioner suggested that the Fifth Amendment rights of the true corporate records custodian could be preserved by "allowing [the corporation] to chose an agent to produce the records who can do so without incriminating himself." 487 U.S. at 116, 108 S.Ct. 2284. The Supreme Court rejected that position. It noted that "[t]he means most commonly used to comply" with the corporation's obligation to produce records where the relevant employees assert a Fifth Amendment privilege was "the appointment of an alternate custodian," but also observed that the practice had significant drawbacks:

> [P]etitioner insists he cannot be required to aid the appointed custodian in his search for the demanded records, for any statement to the surrogate would itself be testimonial and incriminating. If this is correct, then petitioner's "solution" is a chimera. In situations such as this—where the corporate custodian is likely the only person with knowledge about the demanded documents—the appointment of a surrogate will simply not ensure that the documents sought will ever reach the grand jury room; the appointed custodian will essentially be sent on an unguided search.

487 U.S. at 116–17, 108 S.Ct. 2284.

In light of the foregoing language, the utility of the practice of appointing an independent custodian to produce corporate records is dubious at best. As *Braswell* suggests, if the corporation appoints such a custodian, the "true" custodian has an obligation to cooperate and to assist the appointed custodian in conducting the search. It necessarily follows that the true custodian also has an obligation to transmit certain types of knowledge to the

appointed custodian (e.g., where the documents are, and whether they are responsive to the subpoena). And if the true custodian has such obligations, they are necessarily enforceable with the contempt power. Thus, little, if anything, is gained by permitting the corporation to appoint an independent custodian, rather than requiring the true custodian to produce the records.

■ That conclusion is reinforced by the holding of *Braswell* itself, which is that a custodian of corporate records cannot resist a subpoena for such records on the ground that the act of production would tend to incriminate him in violation of his Fifth Amendment rights. Thus, the stated rationale for the practice of appointing an outside custodian—ensuring that the true custodian is able to avoid having to produce corporate records where that production would tend to incriminate him—has been obviated entirely by *Braswell*. See *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d at 57; *Barth*, 745 F.2d at 189.

Although the holding in *Braswell* eliminates the principal purpose of appointing an independent records custodian to produce corporate records to the grand jury, no court appears to have gone so far as to preclude the practice entirely. Thus, when responding to a subpoena duces tecum issued to "The Record Keeper," a corporation remains free, at least under ordinary circumstances, to designate a record keeper of its choosing—including an independent agent who lacks personal knowledge. It is nonetheless clear that the appointment of an outside records custodian does not necessarily relieve the corporation of its obligation to provide "auxiliary" testimony concerning those records.

Thus, if the "record keeper" designated by the corporation is unable to give the necessary testimony, the government can

move to compel the corporation to provide a more qualified record keeper, as it has done here. If no such person is available, of course, the corporation has fulfilled its obligation; but it must produce a competent witness if one is available. Alternatively, if the government believes that a particular employee of the corporation can provide more complete and precise "auxiliary" testimony, and if that employee qualifies as a "custodian of records," the grand jury may simply issue an additional subpoena directly targeting that employee (e.g., "John Doe, as Custodian of Records of XYZ Corporation"). *See In re Sealed Case*, 877 F.2d 83, 85–87 (D.C.Cir.1989) (holding that corporation's president, chief executive, and major shareholder could be considered corporation's "custodian of records" for purposes of collective entity exception to Fifth Amendment privilege, even though corporation had designated another person as record keeper).[4]

### B. *Whether Authentication Testimony and Business Records Testimony May Be Compelled*

■ The question then becomes the scope of the testimony that the corporate custodian of records can be compelled to provide. Unfortunately, analysis of the obligations and rights of corporations and their employees in responding to grand jury subpoenas has been somewhat obscured by a lack of precision in language in the case law. In particular, the word "authenticate"—a term of art under the Federal Rules of Evidence—has been used loosely to describe a variety of different concepts. *See, e.g., In re Trial Subpoena Duces Tecum (Variety Distributing)*, 927 F.2d 244, 247–48 (6th Cir.1991) (using the term "authenticate" to describe the process of qualifying a document under the business records exception, Fed.R.Evid. 803(6)). It is important, therefore, to bear in mind that there are generally at least five separate areas of potential grand jury testimony by a corporate record keeper concerning documents produced in response to a subpoena.

**Category One: Testimony Identifying the Documents.** The first category consists of testimony identifying the documents produced to the grand jury. In addition to physically producing the documents to the grand jury,[5] the record keeper might be called upon to identify or describe the documents, whether in general terms (e.g., "These are the documents that are responsive to the subpoena") or more specifically as to individual documents or categories (e.g., "The box marked 'invoices' contains the documents responsive to paragraph 3 of the subpoena").

**Category Two: Testimony Concerning the Corporation's Response to the Subpoena.** The second category consists of testimony concerning the corporation's response to the subpoena. The record keeper might be called upon to testify as to the nature and scope of the search that was conducted in response to the subpoena; the corporation's current procedures for storing, organizing, and indexing relevant records; the absence or apparent destruction of any requested records; the process that was undertaken to identify and select responsive documents; and (without revealing privileged communications) the process that was undertaken to identify and remove privileged documents.

---

4. In *In re Sealed Case*, the D.C. Circuit indicated that "custodian" is defined as "any agent of the corporation who under ordinary principles of corporate law has custody or control over corporate documents." *Id.* at 86.

5. For purposes of this memorandum, the Court will assume that the documents in question are in paper, rather than electronic, form. Presumably, the analysis would be substantially identical for electronic documents.

**Category Three: Authentication Testimony.** The third category consists of testimony sufficient to authenticate corporate records within the meaning of Fed.R.Evid. 901. Depending on the context, that testimony might be very general (e.g., "These documents are records of XYZ Corporation"), somewhat specific (e.g., "These documents are invoices of XYZ Corporation from 2002"), or very specific (e.g., "This document is a handwritten report of XYZ Corporation dated March 3, 2002, in the handwriting of Executive").

■ **Category Four: Business Records Testimony.** The fourth category consists of testimony sufficient to qualify the records as records of a regularly-conducted business activity within the meaning of Fed.R.Evid. 803(6). In order to qualify the records under that hearsay exception, the record keeper might be called upon to testify as to whether (1) the records were made at or near the time of the acts, events, conditions, opinions, or diagnoses set forth therein; (2) the records were made by, or from information transmitted by, a person with knowledge; (3) the records were kept in the course of a regularly conducted business activity; and (4) it was the regular practice of that business activity to make the record. Although in many instances that testimony might be routine and non-controversial, in others it would not be—for example, where the entity was relatively small and the records were kept irregularly; where a particular record did not fit the normal pattern of business records; or where the entity (or business unit) is defunct and the regular practice of the entity must be reconstructed from former employees.

**Category Five: Substantive Testimony.** The fifth category is substantive testimony about the records themselves—for example, what the records mean—as well as substantive testimony about the affairs of the corporation.

The obligation of a corporate records custodian is not identical as to each of the five categories. First, it is clear that such a custodian may be required to identify the documents produced. The controlling principle is that testimony that is merely "auxiliary" to the production of corporate records may be compelled, even from a record keeper who asserts that such testimony would tend to incriminate him. *See Lawn Builders,* 856 F.2d at 393–94. As the Supreme Court has explained:

> The custodian's act of producing books or records in response to a subpoena duces tecum is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify . . . the documents . . . merely makes explicit what is implicit in the production itself.

*Curcio,* 354 U.S. at 125, 77 S.Ct. 1145.

■ Second, and for the same reason, testimony concerning the corporation's response to the subpoena may be compelled as well. There does not appear to be case law expressly holding that a custodian of records can be compelled to testify as to the scope and nature of the records search. *Compare Lawn Builders,* 856 F.2d at 394 (". . . when an agent of a corporation fails to produce documents that are the subject of a valid summons, he must give sworn testimony that he does not possess them.") (internal quotation and citation omitted). Nonetheless, such testimony clearly can be compelled. If the act of producing documents constitutes an implicit representation that the corporation has produced *all* of the documents demanded in the subpoena, it is also an implicit representation that the corporation has conducted a diligent search. Accordingly, testimony concerning the nature and scope of that search, and otherwise concerning the corporation's response to the subpoena, subjects the record keeper to "little, if any, further danger

of incrimination." *Curcio*, 354 U.S. at 125, 77 S.Ct. 1145.

■ Third, it is clear that testimony authenticating corporate records within the meaning of Rule 901 may be compelled, even from a corporate record keeper who asserts a Fifth Amendment privilege. In the words of the First Circuit:

> We perceive no significant distinction between authentication provided orally and the same provided by some other physical act: the key point is that both methods are "testimonial" for purposes of the fifth amendment.... Since production, including implied authentication, can be required of a corporation through a corporate officer regardless of the potential for self-incrimination, production including oral authentication can also be required.

*In re Grand Jury Proceedings (The John Doe Co., Inc.)*, 838 F.2d 624, 626 (1st Cir. 1988) (citing *Curcio*, 354 U.S. at 125, 77 S.Ct. 1145). Although the case law seems to contemplate relatively general forms of authentication, there is no obvious reason why the authentication of individual documents should not be subject to the same general rule.[6]

Fourth, the Court concludes that testimony sufficient to qualify the documents as business records under Rule 803(6) may not be compelled over the assertion of a Fifth Amendment privilege. According to the government, Fed.R.Evid. 803(6) *requires* a custodian to qualify produced documents as business records. The government further contends that business record testimony does not fall under the protection of the Fifth Amendment.

At least one case appears to support the government's position. The Sixth Circuit has concluded that testimony may be compelled from a corporate record keeper notwithstanding the assertion of a Fifth Amendment privilege. *Variety Distributing*, 927 F.2d at 247–51. Relying principally on *Curcio*, the court concluded that such testimony was not privileged:

> Because a custodian of corporate records has no necessary relation to the *contents* of the documents which he has produced, we do not believe that statements that he is familiar with the company's recordkeeping practices and knows that the company regularly keeps such records in the course of a regularly conducted business activity [are] sufficiently incriminating in and of [themselves].... As the Court in *Curcio* stated, authentication merely makes explicit what is implicit in the act of production and "the custodian is subjected to little, if any, further danger of incrimination."

927 F.2d at 251 (emphasis in original; citation omitted).

However, as a subsequent opinion of a district court has pointed out, the Sixth Circuit's opinion appears to be based on the premise that testimony sufficient to qualify documents as business records was the same as testimony sufficient to authenticate the documents (which, under *Curcio*, may be compelled). *See In re Grand Jury Empaneled on April 6, 1993*, 869 F.Supp. 298, 303–04 (D.N.J.1994). That premise is obviously incorrect. *Id.* The Sixth Circuit's opinion thus "clearly expands *Curcio* and *Braswell*," and indeed goes farther than any other court appears to have gone.

---

**6.** It is possible that authentication may, under some circumstances, shade into substantive testimony, and thus impair the exercise of the Fifth Amendment privilege. For example, it is possible that a corporate record keeper could be required to authenticate a document as a corporate record generally, but not to identify the authorship of specific handwriting on a corporate record, to interpret that handwriting, to interpret an abbreviation or notation, or to interpret an entry in a foreign language. Such issues may need to be resolved on a case-by-case basis.

*Id.* For that reason, and because the government's proffered reasons for expanding the doctrine were unpersuasive, the court in *In re Grand Jury* held that testimony qualifying documents as business records under Rule 803(6) could not be compelled. *Id.* at 305.

Unfortunately, the case law does not impose bright line boundaries, and the matter is not free from doubt. Nonetheless, the Court agrees that such testimony cannot be compelled.

As an initial matter, it appears that no court other than the *Variety Distributing* court has ever held that corporate custodians may be compelled to provide Rule 803(6) testimony, and the case itself is based on an obviously incorrect premise.

Furthermore, Rule 803(6) testimony, unlike authentication testimony, is not "implicit" in the act of producing a document. A witness who produces a document and testifies that the document is responsive to the subpoena has implicitly indicated that the document is genuine; it is but a tiny step from there to authentication testimony, which essentially consists of testimony to the same effect. However, to qualify a document as a business record under Rule 803(6), at a minimum there must be testimony concerning the regular record-creation and record-maintaining practices of the corporation at the relevant time. That testimony may or may not be routine, depending on the facts and circumstances, but it is never implicit in the act of producing records.

Finally, there is no logical stopping point to the principle that a corporate custodian can be required to provide an evidentiary foundation for a document. There is no special magic in the business records exception that it should be elevated over the other hearsay exceptions, or for that matter the definition of hearsay itself set forth in Rule 801. As the court noted in *In re Grand Jury,* "under the government's the-ory ..., a custodian could be compelled to provide foundation testimony regarding a document that would otherwise be inadmissible hearsay to bring it within the co-conspirator exception to the hearsay rule [Rule 801(d)(2)(E) ] ..., a result clearly inconsistent with *Curcio." In re Grand Jury,* 869 F.Supp. at 305.

■ The Court thus concludes that testimony sufficient to qualify documents as business records under Rule 803(6) cannot be compelled from a corporate records custodian who asserts a valid Fifth Amendment privilege.

■ The fifth and final category is relatively easy: no court has held that a corporate records custodian must provide substantive, non-auxiliary testimony about the affairs of the corporation, without regard to the custodian's individual Fifth Amendment rights.

\* \* \*

■ To summarize, the appointment of an independent corporate records custodian, and the production of records by that custodian, does not necessarily relieve a corporation of its obligation to respond to a "keeper of records" subpoena. If that person cannot provide competent "auxiliary" testimony about the records, and another corporate representative can, the corporation must produce the other individual. The "auxiliary" testimony that may be compelled, notwithstanding the custodian's assertion of the Fifth Amendment privilege, consists generally of (1) the identity of the documents produced; (2) the nature and scope of the search performed; and (3) the authenticity of the documents within the meaning of Fed. R.Evid. 901. By contrast, testimony qualifying documents as business records under Fed.R.Evid. 803(6) and substantive testimony is not implicit in the act of production and therefore cannot be compelled.

Based upon its review of the grand jury transcripts here, the Court concludes that ABC Corporation has not adequately complied with the subpoena duces tecum, as its designated record keeper was unable to provide the "auxiliary" testimony to which the government is entitled. For example, he could not testify as to the process taken to identify and select documents responsive to the subpoena. Similarly, he indicated that he had no knowledge as to ABC's current procedures for storing, organizing, and indexing its records. Accordingly, ABC has not yet fulfilled its corporate obligations in responding to the government's subpoena and therefore must make the most qualified custodian available to testify.

### III. *Conclusion*

For the foregoing reasons, the government's motion to compel compliance with the grand jury subpoenas dated October 4 and October 13, 2006, is GRANTED in part. ABC Corporation, is hereby ORDERED to produce, at the grand jury scheduled to meet in Worcester, Massachusetts, on Wednesday, January 17, 2007, or at such other time and place as the parties may agree, a keeper of the records, who shall provide the following testimony, upon valid request, and subject to the interposition of any valid privilege:

1. testimony identifying the documents produced to the grand jury;

2. testimony concerning the corporation's production of the records to the grand jury, including, but not limited to, the nature and scope of the search that was conducted in response to the subpoena; the corporation's current procedures for storing, organizing, and indexing records; the absence or apparent destruction of any requested records; the process that was undertaken to identify and select responsive documents; (without revealing substantive legal advice) the process that was undertaken to identify and remove privileged documents; and

3. testimony concerning the authenticity of the records within the meaning of Federal Rule of Evidence 901.

To the extent the government's motion seeks to compel additional testimony, the motion is DENIED, without prejudice to its renewal as to specific questions on grounds not inconsistent with this memorandum.

**So Ordered.**