**UNITED STATES of America and James L. Sherlock, Special Agent, Internal Revenue Service, Appellants in No. 79–2626,**

v.

**Warren R. ALLSHOUSE,\* Appellant in No. 79–2493.**

**Nos. 79–2493, 79–2626.**

United States Court of Appeals, Third Circuit.

Argued May 22, 1980.

Decided June 4, 1980.

---

\* Although the docket entries contain varying spellings of this name, it has been determined that the correct spelling in Allshouse.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Charles E. Brookhart, R. Russell Mather, (Argued) Attys., Tax Div., Dept. of Justice, Washington, D. C., Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., for the U. S. and James L. Sherlock.

Robert G. MacAlister, Marshall J. Conn (argued), Pittsburgh, Pa., for Warren R. Allshouse.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Warren R. Allshouse (the taxpayer) and the United States both appeal from an order of the district court enforcing a summons issued under I.R.C. § 7602 and directing the Government to refrain from further questioning of the taxpayer. The controversy centers around the tax liability of taxpayer for 1973 through 1975 for his distributive share of the income of a partnership known as New Castle Trucking and Drayage (New Castle). After concluding that the summons was issued for a proper civil purpose, the district court ordered the taxpayer to produce various records of the partnership for the years in question, such as the general ledger, the checking account statements, and so forth. In response to the taxpayer's assertion of his personal fifth amendment rights, the court ordered the Government not to elicit "any testimony and/or other written or verbal information" from the taxpayer.

### I.

■ It is well settled that a partner may not assert a fifth amendment privilege as to the records of the partnership. *Bellis v. United States*, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974). Materials are considered records of a partnership falling outside the privilege if two conditions are met: (1) "the records reflect the organized institutional activity of an entity independent of individual members," and (2) "the records [requested] are held by the possessor in a representative capacity for that entity." *In re Grand Jury Impaneled January 21, 1975 (Freedman)*, 529 F.2d 543, 547 (3d Cir.), *cert. denied*, 425 U.S. 992, 96 S.Ct. 2203, 48 L.Ed.2d 816 (1976).

■ In *Bellis*, the Supreme Court indicated that the independence of the entity in the question will largely depend on the facts of each case. The Court indicated that the following factors would be relevant to this determination: the length of the entity's existence, the entity's organizational structure, and whether the entity held itself out to third parties as an independent institution. *See* 417 U.S. at 95–97, 94 S.Ct. at 2186–2187.

■ We find that the district court properly applied the *Bellis* standards. In 1971, taxpayer and his partner filed for and received from the Pennsylvania Department of State a certificate permitting use of the name "New Castle Trucking and Drayage." In 1976 the taxpayer filed an income tax return on which he indicated that he joined the partnership in 1971. Pennsylvania law, which was also involved in *Bellis*, imposed a certain organizational structure on New Castle and permitted the entity to sue, hold property and perform a variety of other functions. *See* 417 U.S. at 96–97, 94 S.Ct. at 2187.

Moreover, there was evidence in the record to indicate that between 1973 and 1975 New Castle was active and held itself out to others as an entity with an independent identity. For example, the record reveals that there was a bank account in New Castle's name that had an active history of deposits and withdrawals. New Castle was a member of a credit association and purchased objects such as several cars, office equipment and supplies, and other indicia of an ongoing existence. All of these transactions were made in the name of New Castle. Although the taxpayer claims that he

did not personally participate in these transactions, there was sufficient evidence to justify the district court's conclusion that he acquiesced in them.

The fact that there is no evidence of employees other than the two alleged partners is not dispositive because we have held that small, family-run partnerships fall within the rule of *Bellis. See United States v. Mahady & Mahady*, 512 F.2d 521, 523–24 (3d Cir. 1975). In addition, contrary to taxpayer's contention, the fact that New Castle, unlike the firm in *Bellis*, did not file tax returns for the years in question does not show that it did no business in those years. Indeed, New Castle's income in that period is precisely the focus of the present investigation.

Finally, as in *Bellis*, if the taxpayer has the information requested, he holds it in a representative capacity. Just as in that case, the documents are the financial records of the partnership, such as checking records, records of commissions, and so forth. *See* 417 U.S. at 97–99, 94 S.Ct. at 2187–2188.

■ The taxpayer attempts to overcome this result by a number of arguments. He first argues that the Government failed to prove the criteria of *Commissioner v. Culbertson*, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949), which dealt with the factors that are relevant to a determination of whether a partner is liable for the tax on certain portions of the partnership's income. This misperceives the focus of the inquiry in summons enforcement proceedings. In effect, the taxpayer is arguing that the Government must prove he is liable before it can get the information by summons that it needs to prove he is liable. Such a theory would gut the summons power conferred by Congress and is inconsistent with the criteria established in *Bellis*.

■ The taxpayer also raises numerous arguments concerning the weight to be given the evidence and the credibility to be attached to certain testimony. These are matters for the district court. We have reviewed the record and find no error. Ac-

cordingly, we will affirm that portion of the district court's order enforcing the summons in question.

## II.

Although it enforced the summons, the district court ordered the Government to refrain from further questioning the taxpayer. This was in response to the taxpayer's blanket assertion of his fifth amendment privilege. The Government concedes that even though the partnership has no fifth amendment privilege, the taxpayer may still be able to assert his own privilege as to certain information. It argues instead that it should be permitted to ask the questions, at which time the taxpayer can make specific invocations of his privilege. We agree.

In *United States v. Edelson*, 604 F.2d 232 (3d Cir. 1979) (per curiam), we held that when filling out a tax return, a taxpayer normally may not make a blanket claim of privilege but instead must assert it as to each question. We noted that even if there was a case that justified such a broad invocation, the taxpayer had to do more than make mere general assertions. *See id.* at 234–35.

■ We believe that this reasoning applies with equal force to the summons context. *Accord, e. g., United States v. Jones*, 538 F.2d 225 (8th Cir. 1976) (per curiam), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 752 (1977). *See National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 597–600 (3d Cir. 1980). Specific assertion of the privilege serves a dual purpose. First, it helps the court in making an assessment of whether the privilege is justified with respect to the particular question being asked. Additionally, it prevents the taxpayer from using a blanket claim of privilege as a shield for unprivileged evidence of wrongdoing.

■ Because the taxpayer has pointed to nothing that justifies a blanket invocation of his fifth amendment privilege, we will reverse that portion of the district court's order prohibiting the Government from engaging in further questioning.

### III.

The portion of the district court's order enforcing the summons will be affirmed. The portion of the district court's order prohibiting further Government questions will be reversed.