UNITED STATES of America, et al., Plaintiffs, Appellees,

v.

LAWN BUILDERS OF NEW ENGLAND, INC., and James T. Shadoian, Defendants, Appellants.

UNITED STATES of America, et al., Plaintiffs, Appellees,

v.

James T. SHADOIAN, Defendant, Appellant.

Nos. 88–1174, 88–1411.

United States Court of Appeals, First Circuit.

Submitted June 30, 1988.
Decided Sept. 8, 1988.

James T. Shadoian, on brief, pro se in appeal No. 88–1174.

Donald W. MacPherson and MacPherson & McCarville, P.A., Phoenix, Ariz., on brief, for defendant, appellant in appeal No. 88–1411.

William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, William A. Whitledge, Tax Div., Dept. of Justice, Washington, D.C., and Lincoln C. Almond, U.S. Atty., Providence, R.I., on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

## PER CURIAM.

In these consolidated appeals, James T. Shadoian appeals a district court order enforcing an Internal Revenue Service (IRS) summons (Appeal No. 88–1174) and a district court order finding Shadoian in contempt for not complying with its order of enforcement (Appeal No. 88–1411). We affirm.

### Background

In May 1987, an IRS summons was issued directing Lawn Builders of New England, Inc. (Lawn Builders) and its president, Shadoian, (the respondents) to appear before an IRS revenue officer on June 1, 1987 and produce for examination the corporate records of Lawn Builders.[1] See 26 U.S.C. § 7602. According to the summons, the IRS was conducting an investigation into Lawn Builder's tax liability for the years 1984, 1985 and 1986.

Shadoian appeared on June 1, 1987 and sought to taperecord the session. The revenue officer refused to allow the taperecording. Shadoian did not produce any records. The appearance was continued to July 9, 1987, but Shadoian failed to appear.

The IRS petitioned the district court in November 1987 for enforcement of the IRS summons. See 26 U.S.C. §§ 7402(b) and 7604(a). The district court ordered the respondents to appear before the court on January 8, 1988.

At the district court hearing on January 8th, the respondents, with Shadoian acting on his own behalf as well as on behalf of Lawn Builders, objected to the enforcement of the IRS summons on the ground that Shadoian and Lawn Builders have a Fifth Amendment privilege against self-incrimination. The district court ruled that the

1. The summons sought:

"All documents and records in your possession or control reflecting the receipt of taxable income for the above-named corporation for the 3 year(s) ended December 31, 1986 including but not limited to the following: records of gross receipts and sales, dividends received from all sources, interest, rental and royalty income, gains from dealings in property, recovery of bad debts deducted in prior years, income from the discharge of indebtedness, and refund of taxes deducted in prior years; records of deposits to and withdrawals and disbursements from all bank accounts maintained by the above-named corporation during the 3 year(s) ended December 31, 1986; costs of goods sold and/or operations; beginning and ending inventory; method of valuating inventory; compensation, wages, salaries, fees, commissions, and dividends paid to officers, employees, independent contractors and stockholders, (including property other than money); costs of repairs; and payment of taxes, interest, rents, and contributions during 3 years(s) ended December 31, 1986...."

corporation has no Fifth Amendment privilege and ordered Lawn Builders, through one of its officers or a duly authorized agent, to comply with the summons by appearing before the IRS on February 4, 1988. The respondents appealed that order on January 25, 1988. *See Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964) (a district court order enforcing an IRS summons is a final, appealable order). The respondents mailed a copy of the notice of appeal to the IRS with a notation that "[b]ecause of the appeal, I would like to inform you, therefore, that I will not be appearing on February 4, 1988."

The respondents did not petition the district court for a stay of its order and did not appear before the IRS as ordered on February 4th. The IRS subsequently moved for an order holding the respondents in contempt for failing to obey the district court order. The district court ordered the respondents to appear before it on March 25, 1988. The respondents then filed a "motion to dismiss for lack of jurisdiction or for stay of the proceedings," in which respondents contended that they were entitled to appellate review of the enforcement order before any contempt sanctions could be imposed, and therefore concomitantly, the district court was without jurisdiction to impose contempt sanctions before such appellate review had occurred.

The district court rejected the respondents' arguments, based on their failure to apply for and obtain a stay of the enforcement order. The district court found the respondents in contempt and ordered compliance with the terms of the IRS summons by April 1, 1988. The district court warned Shadoian that he would be incarcerated if he failed to comply. The respondents filed a petition for mandamus in this court on March 31, 1988, asking for an order directing the district court to vacate its order of contempt and to stay its proceedings. The respondents contended, as they had before the district court, that the district court had no jurisdiction to find them in contempt while the respondents' appeal of the enforcement order was pending in this court. We denied the petition for mandamus that

same day. On April 1, 1988, the respondents moved in the district court for reconsideration of its contempt order, which was denied. The respondents failed to comply with the order of enforcement and the district court ordered Shadoian incarcerated for six months or until such time as Shadoian "produce[s] the required tax records."

Shadoian next filed a motion in this court for a stay of the district court order of contempt and of the subsequent incarceration. We denied the motion for stay since Shadoian had not filed any appeal from the contempt order. Shadoian then filed a notice of appeal on April 25, 1988. He moved again for a stay of the contempt order and for release of incarceration pending appeal. We consolidated the appeals from the orders of enforcement and contempt and we stayed the order of incarceration pending the appeal. After Shadoian filed a *pro se* brief in his appeal from the enforcement order (No. 88–1174), he retained counsel who filed a brief in his appeal from the contempt order (No. 88–1411) and a reply brief under both docket numbers.

*Order of Enforcement*

The Supreme Court has identified several, although not necessarily exclusive, requirements for the enforcement of an IRS summons. "First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken." *United States v. LaSalle National Bank*, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978); *see* 26 U.S.C. § 7602(c). Second, the IRS must meet the standards of good faith set out in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). *Id.* That is, "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS] Commissioner's possession, and that the administrative steps required by the [IRS] Code have been followed." *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964). In addition, the IRS must not

have abandoned the pursuit of civil tax determination or collection. *United States v. LaSalle National Bank,* 437 U.S. at 318, 98 S.Ct. at 2368.

The petition to enforce the summons, filed by the government, alleged the above-described requirements and was accompanied by an affidavit of the revenue officer conducting the investigation, which reiterated the petition's claims. "Assertions by affidavit of the investigating agent that the requirements are satisfied are sufficient to make the prima facie case." *Liberty Financial Services v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985); *accord Matter of Newton,* 718 F.2d 1015, 1019 (11th Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *United States v. Kis,* 658 F.2d 526, 536 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Garden State Nat. Bank,* 607 F.2d 61, 68 (3d Cir.1979).

■ Shadoian does not challenge the IRS' showing as to any of these requirements. Rather, Shadoian argues that the IRS must prove that the documents sought by the summons exist. Further, Shadoian contends that, although paragraph VI of the petition alleged that the respondents are in possession and control of documents concerning the investigation, his answer sufficiently denied that allegation and his Fifth Amendment right protects him from any further inquiry as to the existence, possession or control of those documents. As Shadoian sees it, the failure of the IRS to prove the existence of the documents as well as his assertion of a Fifth Amendment privilege against self-incrimination required the district court to deny enforcement of the summons.

Shadoian is incorrect. We have previously rejected the contention that the IRS must *prove by positive evidence* the existence of the records and their possession by the summonee. *United States v. Freedom*

*Church,* 613 F.2d 316, 322 (1st Cir.1979); *see also McPhaul v. United States,* 364 U.S. 372, 378–80, 81 S.Ct. 138, 142–43, 5 L.Ed.2d 136 (1960) (criminal conviction for willful failure to comply with Congressional subpoena upheld—evidence of Subcommittee's reasonable basis for believing that petitioner could produce the records in question, coupled with the evidence of his failure even to suggest to the Subcommittee his inability to produce those records, clearly supported an inference that he could have produced them. The burden then shifted to petitioner to present some evidence to explain or justify his refusal); *cf. United States v. Antonio J. Sancetta, M.D., P.C.,* 788 F.2d 67, 72 (2d Cir.1986) (summonee has burden of proving records' nonexistence or that he does not possess them); *but cf. United States v. Rue,* 819 F.2d 1488, 1493 n. 4 (8th Cir.1987) (burdens of production and proof on question of existence, possession, and authenticity of summoned documents are on the government). We are of the opinion that the district court had sufficient reason to believe that the documents sought existed and that Shadoian had actual or constructive possession of them. The documents sought were the sort of records which one would expect a corporation to routinely create, *see* footnote 1 *supra,* and in the answer filed in response to the petition for enforcement, Shadoian admitted the existence of the corporation, his status as its president and the fact that both he and the corporation could be found at the same address.[2]

"Once the district court has reason to believe that the requested documents exist, the burden then shifts to the summonee to show that he is not in possession of them." *United States v. Freedom Church,* 613 F.2d at 322 (citing *Angiulo v. Mullins,* 338 F.2d 820, 822 (1st Cir.1964)), *cert. denied,* 380 U.S. 963, 85 S.Ct. 1108, 14 L.Ed.2d 154 (1965); *see also United States v. Huckaby,*

**2.** Shadoian argues that the district court did not make an express finding that the corporate records existed. We think that the hearings before the district court, both as to the order of enforcement and order of contempt, sufficiently indicate the district court's conclusion that the

records sought were corporate records routinely expected to exist and to be in the actual or constructive possession of the corporation's president. Transcript of hearing on January 8, 1988 at p. 6; Transcript of hearing on April 1, 1988 at p. 14; 18; 23.

776 F.2d 564, 567 (5th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1468, 89 L.Ed.2d 724 (1986) (government need not introduce evidence that summonee actually possesses the requested documents as part of its initial showing seeking the enforcement of an IRS summons; lack of possession or control of summoned documents is a valid defense to application for enforcement order as to which party resisting enforcement bears burden of producing credible evidence that he does not possess or control the documents sought). Shadoian never affirmatively stated that he did not possess or control the requested documents. In response to the petition's allegation that the respondents were in possession and control of the sought-after documents, the respondents answered that they "lack[ ] knowledge or information sufficient to form a belief as to the truth of said matter, and thereby den[y] the same." Both in the answer to the petition and in his argument at the enforcement hearing before the district court, Shadoian further relied on an alleged Fifth Amendment privilege as the basis for refusing to admit or deny either the existence of the documents or his possession or control of the same.

■ While a valid invocation of a Fifth Amendment privilege may relieve the summonee from answering questions, *see United States v. Rylander,* 460 U.S. 752, 758, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983), we believe that the district court correctly determined that Shadoian's invocation of a Fifth Amendment right was misplaced. Contrary to Shadoian's persistent assertion, the government is not seeking any oral testimony forcing him "to disclose the contents of his own mind." *Curcio v. United States,* 354 U.S. 118, 128, 77 S.Ct. 1145, 1151, 1 L.Ed.2d 1225 (1957). In *Curcio,* the Supreme Court upheld the Fifth Amendment right of a custodian of a union's books and records to refuse to answer questions, pursuant to a personal subpoena *ad testificandum,* as to the whereabouts of books and records which he had not produced pursuant to a subpoena *duces tecum* addressed to him in his capacity as secretary-treasurer of the union. *Id.* The Court was careful to point out that the

petitioner in *Curcio* was prosecuted for failure to answer questions pursuant to the personal subpoena *ad testificandum* and not for failure to produce the documents demanded in the subpoena *duces tecum. Id.* at 121, 77 S.Ct. at 1148. The Court indicated that a prosecution for failure to produce the records demanded by the subpoena *duces tecum* would have been proper and that the objectional nature of the testimony sought was that it was "more than 'auxiliary to the production' " of the unprivileged records. *Id.* at 124–28, 77 S.Ct. at 1149–52 (quoting *United States v. Austin–Bagley Corp.,* 31 F.2d 229, 234 (2d Cir.1929)). We note that the custodian had testified that he was the union's secretary-treasurer; that the union had books and records; but that they were not then in his possession. *Id.* at 119, 77 S.Ct. at 1147.

■ In the present case, the summons was not directed at Shadoian as an individual, but rather was directed at Lawn Builders, the corporation, and Shadoian as its president. The summons sought only the production of corporate records. It is well-settled that a corporation has no Fifth Amendment privilege to refuse to produce corporate records. *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). Shadoian seeks refuge in caselaw which recognizes that the act of producing documents may have incriminating aspects, permitting the proper invocation of the privilege. *See Fisher v. United States,* 425 U.S. 391, 410, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). That caselaw is unavailing to Shadoian, however. To the extent that any act of production or non-production is an implicit representation of their existence/non-existence and possession or control by Shadoian, that representation, in this case, does not result from any impermissible questioning by the government which is more than auxiliary to the production of unprivileged records. A summons is enforceable against a custodian of corporate documents despite the fact that producing the documents tacitly admits their existence and location in the hands of the possessor. *Id.* at 411–12, 96 S.Ct. at 1581–82. Further,

when an agent of a corporation fails to produce documents that are the subject of a valid summons, he must give sworn testimony that he does not possess them. *United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318 (2d Cir.1979). A statement of non-possession is auxiliary to the duty to comply with the summons and that statement is not subject to any Fifth Amendment privilege. *Id.* We believe it was proper to presume Shadoian, as president and corporate officer, to be the custodian of the corporate records unless he presented evidence otherwise. "When the appellant became president of the corporation and as such held and used its books for the transaction of its business committed to his charge, he was at all times subject to its direction, and the books continuously remained under its control. If another took his place his custody would yield. He could assert no personal right to retain the corporate books against any demand of government which the corporation was bound to recognize." *Wilson v. United States*, 221 U.S. 361, 385, 31 S.Ct. 538, 546, 55 L.Ed. 771 (1911).

Likewise, *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) is of no aid to Shadoian's argument on appeal. In *Doe*, the Court determined that the act of producing business records of a sole proprietorship was privileged as that act would involve testimonial self-incrimination as to their existence, possession and authenticity. *Id.* The present case concerns a corporation, not a sole proprietorship. Although Shadoian states on appeal that he is the "sole owner of this professional corporation" (Brief in No. 88–1174 at page 10), he, at no time, raised this allegation in the court below or argued that he was sole shareholder and officer or, in other words, that Lawn Builders was a so-called "one-man corporation." In fact, the transcript of the enforcement hearing of January 8, 1988 indicates that initially the government issued three summons, one for the personal records of James T. Shadoian, one for the personal records of Donald Shadoian, James's brother, and one for the corporate records of "their" corporation. (Tr. at p. 2.) The government conceded

that both James and Donald had validly interposed Fifth Amendment privileges as to their personal records and no issue is raised in this appeal as to those matters. Nonetheless, it is unclear what role, if any, Donald Shadoian has with respect to this corporation.

In any event, even assuming Lawn Builders to be a one-man corporation and James T. Shadoian to be that one man, the corporate records are not shielded from production, nor may Shadoian resist a subpoena for those records on the ground that the act of production would impermissibly infringe on his Fifth Amendment right against self-incrimination. *Braswell v. United States*, — U.S. —, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *In re Grand Jury Proceedings (John Doe Co., Inc.)*, 838 F.2d 624 (1st Cir.1988). The enforcement order requiring "[t]hat respondent Lawn Builders of New England, Inc., through one of its officers or a duly authorized agent, shall comply with and obey forthwith the summons, and each and every requirement thereof, served on it on May 19, 1987, and shall appear, through its officer or a duly authorized agent, and produce the books, papers, records, or other data required and called for by the terms of said summons, and the officer or duly authorized agent shall testify as to the authenticity of said corporate books, papers, records, or other data ..." is in accord with the caselaw. *Id.*

Shadoian, therefore, could not validly rely on a Fifth Amendment privilege to defend against the petition for enforcement. There being sufficient evidence for the district court to believe that the requested documents exist and Shadoian having failed to carry his burden of producing evidence of his non-possession or control, we affirm the district court's order of enforcement.

*Order of Contempt*

At the initial hearing on the government's motion for contempt, Shadoian argued solely that the district court lacked jurisdiction to hold him in contempt because his appeal of the order of enforcement was still pending. The district court

correctly rejected this contention since Shadoian had neither applied for, nor received, a stay of the district court's enforcement order. There being no dispute that the enforcement order was not complied with, the court found Shadoian in contempt of that order. The court stayed the order of contempt for one week to allow Shadoian to comply.

One week later, a second hearing was held. No records had been turned over in compliance with the order enforcing the IRS summons. At that time, Shadoian stated affirmatively for the first time that the records were not in his possession or control. Confusingly, Shadoian also attempted to argue that after stating that he does not have the records, he can then assert a Fifth Amendment right "not to testify whether they're in my possession or control or whether they exist or don't exist." [3]

■■■ Lack of possession or control of records is a ground upon which to contest an IRS summons. *United States v. Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552. It is properly raised in a proceeding to enforce the summons, but may not be raised for the first time in a contempt proceeding. *Id.* "[A] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Maggio v. Zeitz*, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948).

■■■■ Although a defendant in a civil contempt proceeding cannot attack an enforcement order on the ground that he lacked possession or control of the records at the time the enforcement order issued, he may assert a present inability to comply with the enforcement order. *United States v. Rylander*, 460 U.S. at 757, 103 S.Ct. at 1552. However, because there is a presumption of continuing possession arising from the enforcement order, he is required to come forward with evidence in support of his assertion. *Id.* at 760–61, 103 S.Ct. at 1554–55. Shadoian continued to insist that his burden of production was satisfied by his assertion of a Fifth Amendment privilege against self-incrimination. We have determined, *supra*, that Shadoian could not invoke a Fifth Amendment privilege in refusing to produce these corporate records. Even were the privilege applicable, however, a claim of a Fifth Amendment privilege against compulsory self-incrimination may not "substitute for relevant evidence" as to a present lack of possession or control. *Id.* at 761, 103 S.Ct. at 1554. As in *Rylander*, Shadoian's statement at the contempt hearing that he did not possess the records and his simultaneous assertion of a Fifth Amendment privilege constituted a failure to introduce any evidence and a failure to carry his burden of production.

We affirm the order of contempt, committing Shadoian to the custody of the United States Attorney General for a period of six months or until such time as he produces the required records. If compliance with the order of enforcement by producing the corporate records is factually impossible, Shadoian has the burden of producing evidence satisfactory to the district court to show his present inability to comply with that order, a burden which is not satisfied by the invocation of a Fifth Amendment claim.

AFFIRMED.

---

**3.** Shadoian apparently sent a letter to the district court dated two days before this second hearing which also stated affirmatively that he did not have the records, but concommitantly contended that he had a Fifth Amendment right to refuse to acknowledge or deny the existence of the records. This letter was not docketed in the district court nor is it part of the record before us. This fact is of no matter. Whether Shadoian first stated his non-possession, while also arguing his right not to so state, at the second hearing or in a letter dated two days before that hearing affects neither the reasoning nor the result in this opinion.