**UNITED STATES of America, Petitioner,**

v.

**Joseph RANIERE, Respondent.**

**Civ. A. No. 95–162 (AJL).**

United States District Court,
D. New Jersey.

July 24, 1995.

Susan Cassell, Assistant United States Attorney, Newark, NJ, Charles M. Flesch, Trial Attorney, Tax Division, U.S. Department of Justice, Washington DC, for petitioner.

Alan G. Merkin, Calo Agostino Merkin, Hackensack, NJ, for respondent.

## OPINION

LECHNER, District Judge.

This is an action brought by petitioner, the United States of America (the "Government") to enforce an Internal Revenue Service (the "IRS") summons (the "IRS Summons"). Jurisdiction is alleged pursuant to 26 U.S.C. §§ 7402(b) and 7604(a), and 28 U.S.C. §§ 1340 and 1345. Venue appears to be proper. 28 U.S.C. §§ 1391(b) and 1396.

The IRS issued the IRS Summons to respondent Joseph Raniere ("Raniere") in his capacity as president of Robert Romeo, Inc. ("Romeo Inc."), d/b/a Raniere Associates, Inc. ("Raniere Associates").

On the Government's motion, the court entered an order to show cause (the "OTSC") why Raniere should not be compelled to obey the IRS Summons. Because the Government was unable to serve Raniere within the time required by the OTSC, an Amended Order to Show Cause (the "Amended OTSC") was entered.

Currently before the court is the petition, filed by the Government, seeking to enforce the IRS Summons (the "Petition to Enforce").[1] For the reasons set forth below, the Petition to Enforce is granted; Raniere is ordered to comply with the IRS Summons.

*Facts*

A. *The IRS Summons*

Raniere is president and sole shareholder of Romeo Inc., d/b/a Raniere Associates. Bassinder Declaration, ¶ 2. The IRS has been conducting an investigation (the "IRS Investigation") into Raniere's Federal tax liability during the 1991 through 1993 tax years. *Id.* at ¶ 3. The IRS Investigation has yielded information indicating Raniere may have had unreported income during the years in question. *Id.* at ¶ 5. The alleged unreported income is associated with Romeo Inc. *Id.*

IRS Special Agent Bassinder issued the IRS Summons to Raniere. This was done pursuant to sections 7602 and 7603 of the Internal Revenue Code, 26 U.S.C. §§ 7602 & 7603, and to the power given her as an IRS Special Agent pursuant to 26 C.F.R. § 301.7602–1.[2] The IRS Summons required Raniere to produce a number of Romeo Inc.'s corporate documents and to give testimony with respect to those documents.[3] *See* IRS

1. In support of the Petition to Enforce, the Government submitted: Petition to Enforce IRS Summons (the "Petition to Enforce"), Brief in Support of United States' Petition to Enforce Internal Revenue Summons and in Reply to Respondent's Opposition/Response Thereto (the "Brief in Support"), Declaration of Debra A. Bassinder, IRS Special Agent (the "Bassinder Declaration"), Supplemental Brief in Support of United States' Petition to Enforce Internal Revenue Summons and in Further Reply to Respondent's Opposition/Response Thereto (the "Government's Supplemental Brief").

  Raniere submitted: Affidavit of Alan G. Merkin (the "Merkin Affidavit"), Response to Amended Order to Show Cause (the "Response"), Letter dated 22 February 1995 (the "22 February Letter"), Supplemental Brief in Support of Respondent's Entitlement to Protection Under the Fifth Amendment (the "Respondent's Supplemental Brief").

2. Section 7602 of the Internal Revenue Code provides, in pertinent part:

  For the purposes of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

  (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

  (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

  (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

  26 U.S.C. § 7602(a). Section 7603 of the Internal Revenue Code provides a summons issued shall be served "by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode[.]" 26 U.S.C. § 7603.

  Additionally, IRS regulations allow "any authorized officer or employee of the Internal Revenue Service" to act on behalf of the IRS. 26 C.F.R. § 301.7602–1(a)–(b).

3. Specifically, with respect to corporate documents sought, the IRS Summons seeks: general ledgers; general journals; cash disbursement journal; cash receipts journal; vouchers; paid bills; invoices; billings; bank statements; deposit tickets; cancelled checks and check stubs; payroll records; contracts and copies of contracts; financial statements; copies of income tax returns; copies of payroll tax returns; purchase orders; accounts payable ledgers; accounts receivable ledgers; stock transfer book; corporate minutes and resolutions; loan records; inventory records; investment records; all memoranda, intra-office or otherwise, notes (formal and informal), and all correspondence; records of commissions and rebates; accounting work papers and correspondence with accountants; correspondence to and from suppliers; and telephone toll records. IRS Summons at 1–2.

Summons at 1. The IRS Summons was served on Raniere "as President of [Romeo Inc.] d/b/a Raniere Associates...." *Id.* Additionally, the IRS Summons is restricted on its face to the time period from 1 January 1991 through 31 December 1993. *Id.*

All administrative requirements necessary for the issuance of an IRS summons have been satisfied. Bassinder Declaration, ¶ 16. There is no "Justice Department Referral" (*i.e.* no grand jury investigation or request for a criminal prosecution), and the Department of Justice has not made a request for the disclosure of any return or return information with respect to Raniere. *Id.* at ¶ 4.

The IRS currently possesses some of Romeo Inc.'s corporate documents.[4] *Id.* at ¶ 9. The documents currently in IRS possession, however, are insufficient to satisfy the IRS Summons. *Id.*

Raniere has not complied with the IRS Summons, as required. *Id.* at ¶ 8. The Amended OTSC required Raniere to "file and serve a written response to the Petition supported by appropriate affidavit(s), as well as any motions [Raniere] desires to make." Amended OTSC at 2.

The Amended OTSC further ordered:

that all motions and issues raised by respondent JOSEPH RANIERE will be considered upon the return date of this Order;

that only those issues raised by motion or brought into controversy by the responsive pleading, and supported by affidavit(s), will be considered at the return of this Order; that any uncontested allegations in the Petition will be considered as admitted for the purposes of this enforcement proceeding; that the affidavits in opposition to the Petition or in support of any motion shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein; and that any affidavit failing to comply with this standard shall not be considered by the Court[.]

Amended OTSC at 2–3.

### B. Raniere's Response

In response to the Petition to Enforce and the Amended OTSC, Alan G. Merkin ("Merkin"), Raniere's counsel, submitted the Response, supported by the Merkin Affidavit. The Merkin Affidavit states Merkin has "been charged with the care, responsibility and handling of the within matter and, as such, ha[s] personal knowledge of the case and [is] fully familiar with the facts contained [t]herein." Merkin Affidavit at 1. The Merkin Affidavit contends the IRS Summons is unenforceable for the reasons set forth in the Response. Merkin Affidavit at 2.[5]

---

4. Currently in the possession of the IRS are: For tax year 1992—Form 1096, an accountant-prepared general ledger for the period ending 31 December 1992, accountant's adjusting journal entries, list of deposits for an unidentified bank account, list of cash paid items prepared by taxpayer, bank statements, cancelled checks and deposit items for several bank accounts; for the tax year 1993—Form 1096, accountant-prepared general ledger for the period ending 31 December 1993, check stubs for period 8 December 1993 to 31 December 1993, deposit items for a Chemical Bank account, bank account charges for the period 26 February 1993 to 2 November 1993, accountant's adjusting journal entries, Form 940 (FUTA) tax return prepared by accountant, Form 941 (FICA) tax return for periods ending 30 June 1993, 30 September 1993, bank statements, cancelled checks and deposit items for several bank accounts.

5. It is arguable whether the Merkin Affidavit satisfies the Amended OTSC's requirements, and, therefore, whether it should be considered. The Government's Brief in Support challenges the sufficiency of the Merkin Affidavit, arguing it

"fails to comply with the personal knowledge requirement set forth in the Court's [Amended OTSC]." Brief in Support at 18; *see also* Rule 27 of the General Rules Governing the United States District Court for the District of New Jersey.

Additionally, the Government also claims the Merkin Affidavit is "based on an erroneous conclusion of law, and on inadmissible hearsay." Brief in Support at 18. Because, the Government argues, the personal knowledge requirement "mirrors the standard set forth in Rule 56(e) of the Federal Rules of Civil Procedure," Brief in Support at 17 n. 18, an affidavit must set forth facts that would be admissible in evidence, and must affirmatively show that the affiant has personal knowledge and that "he or she is competent to testify as to all matters stated in the affidavit." *Id.* at 17–18 n. 18 (citing *Hlinka v. Bethlehem Steel Corp.,* 863 F.2d 279, 281–82 (3d Cir.1988); *Maldonado v. Ramirez,* 757 F.2d 48, 50 (3d Cir.1985).

For the purposes of this Petition to Enforce, the Merkin Affidavit will be considered. There

The Response sets forth the reasons why Raniere seeks to have the IRS Summons quashed. Paragraph 3 of the Response alleges the IRS Summons is "unduly burdensome, oppressive, vague and overly broad rendering it unenforceable...." Response at 2. The Response also contends that the IRS Summons (a) lacks specificity with respect to exactly which corporate entity's records are sought, (b) "presumably calls for all documents pertaining to the operation of some corporation without any limitations or parameters[,]" (c) lacks any specificity with respect to the time period from which documents are sought, (d) calls for documents already in the Government's possession, and (e) was not served on "a custodian of records or any other authorized employee or agent in accordance with established IRS administrative practice." Response at 2–3. Additionally, the Response contends Raniere should be entitled to assert his Fifth Amendment privilege against self-incrimination with respect to any testimony required by the IRS Summons. *Id.*

*Discussion*

**A. The Government's Prima Facie Case**

■ *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), sets forth the requirements for a *prima facie* case for enforcement of the IRS Summons. The Government "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [Government's] possession, and that the administrative steps required by the [Internal Revenue] Code have been followed...." *Id.* at 57–58, 85 S.Ct. at 255.

The *Powell* requirements have been met in this case. The Bassinder Declaration recites that the purpose of the IRS investigation is to investigate the tax liability of Raniere, who is the president and sole owner of Romeo, Inc. The IRS Investigation is designed to

determine whether Raniere has violated any tax law with respect to the tax years 1991 through 1993. The IRS Investigation has thus far revealed that Raniere may have unreported income, as a result of his activities with Romeo Inc. Bassinder Declaration at 2. It appears the IRS Investigation is legitimate.

With regard to the second prong of the *prima facie* showing required by *Powell,* the information sought appears to be relevant to the legitimate purpose of the IRS investigation. "[T]he [G]overnment is entitled even to information that has only *'potential* relevance' to the investigation, ..., and the applicable standard is whether the information sought ' "might throw light upon the correctness of the [tax] return." ' " *United States v. Rockwell Intern.,* 897 F.2d 1255, 1263 (3d Cir.1990) (emphasis in original) (citations omitted). The requested corporate documents from Romeo, Inc. are an appropriate source to determine whether Raniere, its president and sole shareholder, received income from it which he did not report for the tax years in question.

The third prong of the *Powell* requirement is that the documents sought are not already in the possession of the Government. This requirement is satisfied by the Bassinder Declaration, which lists the documents already in the possession of the Government, and states that those documents do not satisfy the scope of the IRS Summons. Bassinder Declaration, ¶ 9.[6]

Finally, *Powell* requires the Government to comply with all administrative requirements. In order to ascertain the correctness of any tax return, the Government is authorized to "examine any books, papers, records or other data which may be relevant to such inquiry[.]" 26 C.F.R. § 301.7602–1. Bassinder was authorized to issue the IRS Summons. The administrative requirements imposed by the relevant IRS regulations have been met. The Government has made a *prima facie* case for the enforcement of the

do not appear to be any hearsay statements in the affidavit; Merkin states that he has sufficient personal knowledge to testify as to this matter.

6. For example, the IRS Summons requests business records for the period between 1 January

1991 and 31 December 1993. For the 1993 taxable year, however, Raniere has only supplied check stubs for the period 8 December through 31 December. Bassinder Declaration, ¶ 9.

IRS Summons. Therefore, the burden of demonstrating that the IRS Summons should not be enforced is on Raniere. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255; *United States v. Wheaton,* 791 F.Supp. 103, 105 (D.N.J.1992).

### B. *The Allegations in Raniere's Response*

#### 1. *Allegations of Technical Flaws*

■ The Government has responded adequately to each of the technical challenges to the IRS Summons raised by Raniere in the Response. The allegation that the IRS Summons lacks specificity because it is not clear as to which entity's documents are sought is without merit. The IRS Summons is addressed to Raniere, as president of Romeo Inc. d/b/a Raniere Associates and is clear with regard to which entity's records are sought. At the top of Attachment A to the IRS Summons, which details the documents sought, the word "Corporate" is prominently stated. There can be no question that the documents sought are the corporate records of Romeo Inc.

■ Raniere's challenge to the IRS Summons on the basis that records are sought without any limitations or parameters is likewise misplaced. The IRS Summons identifies twenty-nine specific categories of documents or records sought from Romeo Inc. It is confined to a specific period of time—1 January 1991 through 31 December 1993. Any challenge to the specificity of the IRS Summons is without merit. For the same reasons, Raniere's contention that the IRS Summons is unenforceable because no time period under investigation is identified is also without merit.[7]

■ Raniere contends the IRS Summons was not served on a custodian of records or "authorized employee or agent in accordance with established IRS administrative practice." Response at 3. The Response, however, does not cite an IRS administrative practice that service of the IRS Summons on Raniere is alleged to have violated. Raniere,

as president of Romeo Inc., is either an authorized employee or custodian of records; service of the IRS Summons on him was appropriate. See *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); *United States v. Lawn Builders of New England, Inc.,* 856 F.2d 388, 394 (1st. Cir.1988).

#### 2. *The Fifth Amendment Claim*

■ In the Response, Raniere also claims he should be able to "assert his privilege against self-incrimination with" respect to an IRS summons." Response at 3.

■ Generally, a blanket or general assertion of a Fifth Amendment privilege to resist enforcement of an IRS summons is insufficient as a matter of law. *United States v. Allshouse,* 622 F.2d 53, 56 (3d Cir.1980); *see also ICC v. Gould,* 629 F.2d 847, 861 (3d Cir.1980), *cert. denied* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). Rather, a taxpayer must specifically assert the Fifth Amendment privilege with respect to individual requests. This requirement serves a dual purpose: "First, it helps the court in making an assessment of whether the privilege is justified with respect to the particular question being asked. Additionally, it prevents the taxpayer from using a blanket claim of privilege as a shield for unprivileged evidence of wrongdoing." *Allshouse,* 622 F.2d at 56.

In *Allshouse,* the IRS issued a summons seeking partnership documents and testimony. *Id.* at 55. The Circuit affirmed the district court's enforcement of the summons, but reversed the district court's order prohibiting the Government from asking any questions. *Id.* at 57. "[M]ere general assertions" of Fifth Amendment privilege are insufficient. *Id.* As discussed, "specific invocations" of the privilege must be asserted with respect to particular questions. *Id.*

■ A "taxpayer seeking the protection of [the Fifth Amendment] to avoid compliance

---

**7.** The 22 February Letter argues that, even though the time period is clearly set forth, there could be some ambiguity because "[i]t should be undisputed that records have a tax significance for the years subsequent to their creation." 22

February Letter at 3. Merkin claims, therefore, that hypothetical documents predating those requested in the IRS Summons could impact Raniere's tax liability for the 1991–93 taxable years. This argument is without merit.

with an IRS summons 'must provide more than mere speculative, generalized allegations of possible tax-related prosecution.... [T]he taxpayer must be faced with substantial and real hazards of self-incrimination.'" *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir.1991) (citation omitted).

The jurisprudence of the Third Circuit, prior to *Braswell*, is succinctly stated in *In re Grand Jury Matter*, 768 F.2d 525 (3d Cir. 1985), which framed the self-incrimination issue as follows:

> We must decide whether a person, simply by virtue of his status as a custodian of a corporation's records, can be compelled to make self-incriminating disclosures that are testimonial, *i.e.* communicative or assertive in nature.... Thus, what is in issue is solely the question whether [the custodian] may be compelled by subpoena to give testimony ..., verbally or by a non-verbal communicative act, authenticating those records.

*Id.* at 526.

The Government in *In re Grand Jury Matter* argued that such testimony could be compelled, whether verbal or otherwise, and that it could subsequently be used against the custodian. *Id.* The Circuit held the custodian could "not be held in contempt for refusing to authenticate records absent either a finding that there is no likelihood of self-incrimination or a grant of use immunity...." *Id.* at 528.

The Circuit further court noted that its holding "casts no doubt on the continued vitality of the rule[ ] ... that neither corporations nor other collective entities may assert a privilege against self-incrimination." *Id.* "Where a witness is required to authenticate records, most business entities will have agents who can provide the testimony without self-incrimination." *Id.* at 529.

Because the Government in *In re Grand Jury Matter* "never explored alternate means of production or authentication of the documents," *id.*, the Circuit held that the district court, before allowing the custodian to invoke the Fifth Amendment privilege, must first determine whether the testimony sought would tend to incriminate him. *Id.* at 529.

*In re Grand Jury (31 October 1985)*, Misc. No. 85–343, slip op. (D.N.J. 11 March 1987), *rev'd on other grounds, sub nom., Matter of Special Federal Grand Jury*, 819 F.2d 56 (3d Cir.1987), dealt with a motion to quash an IRS subpoena that was similar to the one in the instant matter. The subpoena in *31 October Grand Jury* was addressed to an officer of a closely-held corporation and sought corporate documents. Slip op. at 3. The corporate officer appeared to be the target of a grand jury investigation. *Id.*

Unlike the instant matter, or the matter before the Circuit in *In re Grand Jury Matter*, the Government in *31 October Grand Jury* sought only documents—not authentication testimony. *Id.* The assistant United States Attorney expressly stated, on the record, that the Government was "not looking for testimony." *Id* at 4. Nevertheless, the corporate officer argued that the subpoena should have been quashed because the act of production would constitute compelled incriminating testimonial communications, in violation of the Fifth Amendment.

The *In re Grand Jury Matter* decision was distinguished at the trial level because the subpoena did not seek oral testimony. Significance was given to fact that the Government sought only document production. "It [did] not seek to authenticate the [d]ocuments through the testimony or conduct of [the corporate officer]." *Id.* at 10.

On appeal, the Circuit remanded the matter for a finding as to whether the corporate custodian's act of production would incriminate him.[8] *Matter of Special Federal Grand*

---

8. The syllabus of the case published in the Federal Reporter indicates that the corporate custodian "was held in contempt by the United States District Court for the District of New Jersey at Newark, Alfred J. Lechner, Jr., J." This is inaccurate. The corporate custodian was held in contempt by H. Lee Sarokin, J. *See* Docket Sheet entry for 26 March 1987, Misc. No. 85–

343. Although the contempt order was reversed by the Circuit, the decision was not. Rather, the matter was remanded for further findings with regard to whether the corporate custodian's act of production would have a self-incriminating effect. *Special Federal Grand Jury*, 819 F.2d at 59.

*Jury,* 819 F.2d at 59. "[I]t cannot be said that a corporate representative's act of production, as a matter of fact, can never be personally incriminating." *Id.*

Because the record in the case was not "sufficiently developed," *id.,* the Circuit remanded the matter to permit the corporate custodian to attempt to persuade the court that he "ha[d] a 'reasonable cause to apprehend danger' of self-incrimination from the act of production." *Id.* (citing *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Donovan v. Spadea,* 757 F.2d 74, 78 (3d Cir.1985)).[9] If such a showing was made, the Circuit directed that "the subpoena should be quashed unless the [G]overnment secures use immunity for [the corporate custodian] pursuant to 18 U.S.C. §§ 6002 and 6003." *Matter of Special Federal Grand Jury,* 819 F.2d at 59.

Subsequent to the Circuit's decision in *Matter of Special Federal Grand Jury,* the Supreme Court addressed this issue in *Braswell.* The *Braswell* Court dealt with a subpoena similar to both the IRS Summons in the instant matter and the subpoena in *31 October Grand Jury.* The subpoena in *Braswell* was addressed to "Randy Braswell, President Worldwide Machinery Sales, Inc. [and] Worldwide Purchasing, Inc." 487 U.S. at 101, 108 S.Ct. at 2286.

Noting a conflict among the courts of appeals[10], the Court restated the long-standing "collective entity" doctrine:

> [W]ithout regard to whether the subpoena is addressed to the corporation, or ... to the individual in his capacity as custodian, ... a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds.

*Id.* at 108–09, 108 S.Ct. at 2290. The Court rejected petitioner's argument that the collective entity doctrine had been diminished by the Court's rulings in cases such as *Fish-*

er v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) and *United States v. Doe,* 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984). *Braswell,* 487 U.S. at 109, 108 S.Ct. at 2290.

The rationale for the decision in *Braswell* was that "[a]rtificial entities such as corporations may act only through their agents, ...," and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the Government." *Id.* at 110, 108 S.Ct. at 2291. The Court concluded by holding that the Fifth Amendment privilege against self-incrimination does not apply where an individual attempts to resist a subpoena for corporate documents on the ground that producing them could incriminate him individually. *Id.* at 119, 108 S.Ct. at 2296.

Following *Braswell,* the Third Circuit stated: "[A corporation] has no Fifth Amendment privilege and may not refuse to produce corporate documents based upon the privilege of a corporate custodian." *U.S. v. $1,322,242.58,* 938 F.2d 433, 439 n. 5 (3d Cir.1991). Other courts have similarly applied this ruling.

■■ Where the custodian of corporate documents is a sole shareholder, employee and officer of a corporation, as Raniere appears to be, the Fifth Amendment will not operate to protect him or her from producing corporate records. *U.S. v. Stone,* 976 F.2d 909, 912 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1843, 123 L.Ed.2d 467 (1993); *Matter of Grand Jury Subpoenas,* 959 F.2d 1158, 1163 (2d Cir.1992); *Lawn Builders of New England,* 856 F.2d at 393–94; *In re Grand Jury Proceedings (John Doe Co., Inc.),* 838 F.2d 624, 627 (1st Cir.1988).

■■ The Fifth Amendment privilege against self-incrimination is personal; it ex-

---

9. The Circuit noted the effort the corporate custodian would have to make for such a showing: "[A] target who produces corporate records solely in a representative capacity may be able to show a reasonable apprehension of personal self-incrimination less often than a target served in an individual capacity, [however] the possibility of such a showing cannot be ruled out." *Matter of Special Federal Grand Jury,* 819 F.2d at 58–59.

10. The Supreme Court noted the Third Circuit's opinion in *In re Grand Jury Matter, supra,* among those recognizing a Fifth Amendment privilege. *Braswell,* 487 U.S. at 102 n. 2, 108 S.Ct. at 2287 n. 2.

tends protection only to the private papers and effects of the person asserting the privilege. *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). "[A]n individual cannot rely upon the privilege to avoid producing the records of a collective entity which are in his [or her] possession in a representative capacity, even if those records might incriminate him [or her] personally." *Bellis v. United States,* 417 U.S. 85, 88, 94 S.Ct. 2179, 2183, 40 L.Ed.2d 678 (1974).

■ As the First Circuit observed: "It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be." ... It was [Respondent's] choice to incorporate. With that choice came all the attendant benefits *and responsibilities* of being a corporation. One of those responsibilities is to produce and authenticate records of the corporation when they are subpoenaed by the grand jury.

*In re Grand Jury Proceedings (John Doe Co., Inc.),* 838 F.2d at 627 (emphasis in original) (citation omitted).

■ Not only is a closely-held corporation required to produce the documents sought by an IRS summons, "a corporate officer who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify them." *Curcio v. United States,* 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957); *Braswell,* 487 U.S. at 114, 108 S.Ct. at 2293; *In re Grand Jury Proceedings (John Doe Co., Inc.),* 838 F.2d at 627 (rejecting claim that one-man corporation should be treated as a sole proprietorship). This is true regardless of the size of the corporation. *Curcio,* 354 U.S. at 125, 77 S.Ct. at 1150; *U.S. v. Medlin,* 986 F.2d 463, 468 (11th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993); *Lawn Builders of New England,* 856 F.2d at 393–94.

As mentioned "a custodian can be compelled to provide limited oral testimony[,]" in addition to producing corporate documents.

*In re Grand Jury Empaneled on April 6, 1993,* 869 F.Supp. 298, 302 (D.N.J.1994). Raniere, accordingly must not only produce the documents sought in the IRS Summons—he must also provide authentication testimony as to those documents.

The production of corporate documents is not a personal act on the part of Raniere; it is an act of the corporation. *Braswell,* 487 U.S. at 110, 108 S.Ct. at 2291. Raniere, as president and sole shareholder of Romeo Inc. (and therefore the custodian of the corporate documents sought pursuant to the IRS Summons), cannot assert a Fifth Amendment privilege with respect to the production of corporate documents. To do so "would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege." *Id.*

Accordingly, the Government's Petition to Enforce is granted. Raniere may not invoke the Fifth Amendment privilege against self-incrimination to avoid the IRS Summons. Any privilege Raniere wishes to assert with regard to his testimony must be made on a question-by-question basis, should he believe answering a particular question would incriminate him. *See Allshouse,* 622 F.2d at 56.

### 3. *Raniere's Use Immunity Request*

■ Raniere also argues he should "not be required to comply with the summons absent a protective order from the Court that, in accordance with *Braswell v. United States,* 487 U.S. 99, 119 [108 S.Ct. 2284, 2296, 101 L.Ed.2d 98] (1988), the [G]overnment cannot make any use of any acts or statements of Raniere and that, if compelled to personally produce corporate records that the protections afforded by *Braswell* were properly raised and preserved."

Response at 3–4.

The Government argues this court cannot enter a use immunity order based solely on Raniere's request. Government's Supplemental Brief at 16. The use immunity statute, 18 U.S.C. § 6003 [11], affords "the Depart-

11. 18 U.S.C. § 6003 provides:

(a) In the case of any individual who has been or may be called to testify or provide other

ment of Justice exclusive authority to grant immunities." *Pillsbury Co. v. Conboy,* 459 U.S. 248, 254, 103 S.Ct. 608, 612, 74 L.Ed.2d 430 (1983).

■ The grant or denial of use immunity rests "within the sole discretion of the executive branch of government." *United States v. Rocco,* 587 F.2d 144, 147 (3d Cir.1978), *cert. denied* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789; *see also United States v. Niederberger,* 580 F.2d 63, 67 (3d Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978) ("except in an extraordinary circumstance ..., a trial court cannot compel the Government to offer [use] immunity to a prospective witness"). Accordingly, absent a request from the Government, a court will not grant use immunity to Raniere's testimony and production of corporate documents.

■ Raniere's request for a court order providing for *Braswell* protections is not necessary. The ruling in *Braswell* disallows the use by the Government against Raniere of the "individual act" of producing the documents. 487 U.S. at 118, 108 S.Ct. at 2295. "For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian." *Id.* This protection is afforded to Raniere by the *Braswell* decision—a court order is not necessary.

The Government may, however, subsequently use the *corporation's* act of production against Raniere, the custodian. "[I]f the defendant held a prominent position within the corporation that produced the records, the jury may, just as it would had someone else produced the documents, reasonably infer that he had possession of the documents or knowledge of their contents. Because the jury is not told that the defendant produced the records, any nexus between the defendant and the documents results solely from the corporation's act of production and other evidence in the case." *Id.*[12]

*Conclusion*

For the reasons stated, the Government's Petition to Enforce is granted. Raniere's request for a protective order or use immunity is denied.

---

information at a proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this title.
(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, the Associate Attorney General or any designated Assistant Attorney General or Deputy Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

18 U.S.C. § 6003.

12. Raniere cites *Medlin, supra,* 986 F.2d 463, to support his argument that he "must also be protected from being compelled to personally select and produce documents which, *in his mind,* relate to the criminal tax investigation of his personal income tax returns." Respondent's Supplemental Brief at 4 (emphasis in original).

*Medlin,* however, merely echoed the *Braswell* holding that the corporate custodian's "individual act" of selecting and producing documents could not be used against him or her. *Medlin,* 986 F.2d at 468. The IRS Summons in this matter does not require Raniere to personally select documents regarding his income tax liability. The IRS Summons lists the corporate documents sought. Raniere is required merely to mechanically compile those documents and turn them over to the Government.

Moreover, the *Medlin* court held that an argument that the Fifth Amendment precluded authentication testimony "[wa]s without merit." *Id.* (citing *Braswell,* 487 U.S. at 114–115, 108 S.Ct. at 2293–94.)